James L. **CAIN,** Plaintiff–Appellant,

v.

Michael P. **LANE, et al.,**
Defendants–Appellees.

No. 87–1901.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1988.

Decided Sept. 19, 1988.

As Amended Oct. 7, 1988.

Howard B. Eisenberg, Southern Illinois Univ., Carbondale, Ill., for plaintiff-appellant.

William Henry London, Civ. Appeals, Atty. Gens. Office, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

James Cain appeals from the district court's entry of summary judgment in favor of defendants in a civil rights action against Menard Correctional Center ("Menard") administrators and guards arising out of events which occurred while the plaintiff was incarcerated there. Cain raises two issues on appeal. First, he argues that the district court erred in granting summary judgment because his complaint raised a genuine issue of material fact with regard to whether the defendants disciplined the plaintiff in retaliation for his constitutionally protected speech. Second, Cain asserts that the disciplinary procedures utilized by Menard did not provide him with adequate due process protections.

The district court failed to address Cain's claim that the prison officials issued disciplinary tickets to him in retaliation for his

participation in protected speech. We therefore reverse and remand for further proceedings on this issue. We find, however, that Illinois statutes and regulations do not create a liberty interest in remaining in the general prison population, and that, therefore, the defendants were not required to afford Cain due process protections before placing him in segregation. Accordingly, the judgment of the district court is reversed in part and affirmed in part.

## I.

On March 7, 1985, Cain met with Warden James H. Thieret, Assistant Warden James Buch, and Major Donald McDonough, all of whom are Menard prison administrators. Prior to this meeting, the general inmate population at Menard had compiled a list of grievances regarding conditions of confinement at Menard, and selected the L.I.F.E. Committee, composed of Cain as well as three other prisoners, to present their grievances to Menard's administrative officials. The inmates hoped to present their grievances in a nonconfrontational manner and to reach agreement with prison officials on possible solutions. Cain asked the administrators to meet with all four members of the L.I.F.E. Committee, but Warden Thieret insisted on meeting only with Cain.

Cain alleges that he presented a copy of the list of grievances to Warden Thieret, Buch, and McDonough at the meeting. Following a general discussion of the grievances, the parties focused on the issue of medical care in the prison. According to the plaintiff's affidavit, McDonough told Cain that he wanted a list of all officers who were ignoring prisoners' requests for medical care. Cain asserts that he then told McDonough that in order to collect specific grievances about correctional officers, he would need to enter cellhouses other than his own to talk to all of the inmates. According to Cain, McDonough then told him to get a pass or permission before entering other cellhouses. After further discussion of various grievances on the list, the meeting ended.

On March 10, 1985, the plaintiff approached Correctional Officer Cox at the entrance of Menard's South Cellhouse and sought permission to enter the cellhouse to collect information about prisoner medical care. Cain claims that Cox patted him down and allowed him to enter. While on Gallery S of the cellhouse, Sergeant Novara and Lieutenant Ramsey approached Cain and asked to see his identification card. They patted him down and confiscated an empty cigarette lighter that he was carrying. They then told Cain to return to his cellhouse.

En route, the plaintiff met Captain Betuski. Betuski asked Cain where he had been, and Cain replied he was returning from the South Cellhouse. Betuski also asked Cain who had given him permission to enter the South Cellhouse. Cain replied that Officer Cox had, and recounted McDonough's directive to collect prisoner grievances in the South Cellhouse. According to Cain, Betuski then radioed McDonough and asked McDonough if he had given the plaintiff permission to enter the South Cellhouse on that specific date— March 10, 1985. McDonough replied in the negative and told Betuski to "write that trouble-making black motherfucker a ticket." Betuski then ordered Cain back to his cellhouse. Cain arrived at his cellhouse without further incident, and Officer Brown escorted him to his cell.

According to Cain, Brown approached the plaintiff that evening at 6:00 p.m. and told him to pack his property because he was going to segregation. Cain asked why, and requested a meeting with Betuski. Immediately thereafter, Lieutenant Fulks arrived at the plaintiff's cell and told him that McDonough had called Betuski and ordered him to have all of the officers Cain had seen that day write Cain disciplinary tickets. Fulks also said that McDonough told Betuski to transfer the plaintiff to segregation. Cain was then taken to segregation, strip-searched, and placed in a cell. Between that evening and the following day, the plaintiff received five disciplinary tickets all arising out of his activities on the morning of March 10, but written so

as to appear to be five unrelated infractions. Menard's Adjustment Committee (the "Committee") met on March 15, 1985 to adjudicate all of Cain's disciplinary tickets. The hearing consisted of the Committee members reviewing a disciplinary investigator's written reports which were not disclosed to the plaintiff. On the basis of the disciplinary report, the Committee rejected Cain's exculpatory statements[1] and found him guilty of all the charged infractions, expressly finding him guilty of five separate incidents. The plaintiff subsequently filed a grievance with the State of Illinois Administrative Review Board (the "Board") contesting the validity of the Committee's proceedings. The Board met at Menard on September 18, 1985 and denied the plaintiff's grievance.[2]

On February 27, 1986, Cain filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of Illinois. He sued the defendants on two related but separate claims. First, he alleged that the defendants had conspired to harass and punish him for his participation in the work of the L.I.F.E. Committee, which he contends was "speech" protected by the first amendment. Second, he claimed that his transfer to segregation and the disciplinary proceedings that followed denied him his right to due process. On May 21, 1987, United States Magistrate Gerald B. Cohn entered summary judgment in favor of the defendants. The plaintiff filed a timely notice of appeal on June 3, 1987.[3]

Cain argues that the district court erred in granting summary judgment for the defendants for two reasons. First, he asserts that he raised a genuine issue of material fact as to whether he was disciplined in retaliation for exercising his first amendment rights. Second, Cain alleges that he

was deprived of due process. On his due process claim, Cain argues both that the district court erred in concluding that Illinois statutes and regulations do not create a liberty interest in remaining in Menard's general prison population, and that his Adjustment Committee proceedings were constitutionally deficient.

## II.

■ Because the district court entered summary judgment for the defendants, we must review the record to determine if there is a genuine issue with regard to any material fact and whether the defendants were entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We will view the entire record in the light most favorable to Cain, the non-moving party. *International Union of Operating Eng'rs v. Associated Gen'l Contractors*, 845 F.2d 704, 705 (7th Cir.1988). If the prison administrators and guards demonstrated that there are no genuine issues of material fact, Cain cannot rely on conclusory allegations; instead, he must provide evidence of specific factual disputes. *Id.* at 708. *See also Duffey v. Central States, S.E. & S.W. Areas Pension Fund*, 829 F.2d 627, 630 (7th Cir. 1987). Finally, because Cain proceeded *pro se* in the district court, that court was obliged to read the complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam*); *Maclin v. Paulson*, 627 F.2d 83, 86 (7th Cir.1980).

## III.

■ The district court construed the plaintiff's complaint narrowly as an attack on the procedures used by the prison officials who issued and adjudicated Cain's dis-

---

1. Cain admitted that he was in the South Cellhouse. The Committee construed this as an admission of guilt on the charge of unauthorized movement.

2. Although the Board upheld the Committee's actions, we note that the language of the Board's recommendation suggests that Cain had really committed only one infraction. "Based on a total review of all available information and a compliance check with the procedural due pro-

cess safeguards outlined in Departmental Rule 504, the Panel is reasonably satisfied the inmate committed *the infraction*. Therefore, the Panel recommends the inmate's grievance be denied." (emphasis added.)

3. On December 10, 1987, in response to a motion filed by Cain, this court appointed counsel to represent him on appeal.

ciplinary tickets. The district court's order reads in part:

> The plaintiff alleges violations of his Fourteenth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, plaintiff alleges that the five disciplinary tickets issued to him by various defendants on March 10, 1985, and the subsequent Adjustment Committee Hearings held on March 13, 1985, violated the aforementioned rights.[4]

A review of Cain's pleadings, however, discloses that he made two distinct claims: (1) retaliatory discipline, and (2) denial of due process. Although the district court addressed Cain's second claim, it failed to note Cain's allegation that he was disciplined in retaliation for engaging in protected speech. His complaint claimed that the named defendants,

> conspired willfully, knowingly, wantonly, arbitrarily, and capriciously to harass Cain solely because Cain attempted to bring about, nonviolent, changes of the inhumane and unconstitutional conditions which existed, and still exist within Menard Correctional Center, thereby subjecting Cain to cruel and unusual punishment.

Even without reading this complaint expansively, it is clear that Cain stated a cause of action for retaliatory treatment. The affidavit Cain filed in support of his complaint also included allegations of retaliatory treatment by prison officials against other members of the L.I.F.E. Committee.[5]

■ Accordingly, we reverse the district court's grant of summary judgment with regard to Cain's claim of retaliatory discipline and remand for further proceedings to determine whether there is a genuine issue of material fact necessitating a trial on the merits of plaintiff's claim.[6]

## IV.

Cain's second claim on appeal is that the prison's disciplinary procedures denied him the due process protections to which he was entitled.

### A.

■ First, he asserts that Illinois State statutes and administrative regulations have combined to create a liberty interest in remaining in the general prison population. Cain argues that he was placed in segregation without being afforded the protections required by due process.

Cain does not argue that the due process clause itself creates a liberty interest in remaining out of segregation. This type of claim was rejected by the Supreme Court in *Hewitt v. Helms*, 459 U.S. 460, 467–68, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) ("administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."). *See also Williams v. Faulkner*, 837 F.2d 304 (7th Cir.1988) (prisoners have no liberty interest in remaining in any particular prison wing). Rather, Cain claims that Illinois statutes and administrative regulations have created a protected liberty interest for prison inmates to remain in the general population.

---

**4.** In addition, the order summarizes plaintiff's claim as an attack on the Adjustment Committee's procedures: "Essentially, plaintiff contends that the decision was not supported by the evidence."

**5.** Cain's affidavit averred, in part, that the other three inmates chosen to be on the L.I.F.E. Committee were also punished because of their involvement in free speech activities. These punishments included being placed in administrative detention, segregation, or other lockdown status.

**6.** We emphasize, however, that not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred. *Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir.1987) (holding that the plaintiff's complaint "set forth a chronology of events from which retaliatory animus on the part of defendants could arguably be inferred" sufficient to overcome a motion to dismiss). *See also Benson v. Cady*, 761 F.2d 335, 342 (7th Cir.1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient"). Barring such a chronology, dismissal may be appropriate in cases alleging retaliatory discipline.

In *Hewitt*, the Supreme Court held that the adoption of a statutory and regulatory framework for administrative segregation creates a liberty interest only where the procedural guidelines contain statutory language "of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed … and that administrative segregation will not occur absent specific substantive predicates—viz. 'the need for control,' or 'the threat of a serious disturbance.'" *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871. The test for whether a statutory or regulatory procedure creates a protectable due process interest, then, hinges on the actual language used by the legislature or agency. "Absent some statutory or regulatory provision that clearly limits prison officials in the exercise of their discretion, a prisoner may be transferred for any reason, or for no reason at all." *Williams*, 837 F.2d at 309. *See also Culbert v. Young*, 834 F.2d 624 (7th Cir.1987) (no liberty interest created by permissive rather than mandatory language); *Mathews v. Fairman*, 779 F.2d 409 (7th Cir.1985) (no liberty interest created by language in a statute providing that an inmate "may" be reassigned within the institution).

We reject Cain's argument that the State of Illinois' statutory and regulatory procedures have created a liberty interest for Illinois' prisoners to remain in the general prison population. The first allegedly relevant provision is the Illinois statute regulating disciplinary procedures, codified at Ill.Rev.Stat. ch. 38, para. 1003–8–7 (1986).[7] This statute does not address the issue of segregation, and so does not create a right to remain in the general prison population.

Sections 504.600–.650 of the Illinois Administrative Code, codified at Ill.Admin. Code, tit. 20, §§ 504.600 *et seq.* (1985), deal with standards and procedures for segregation facilities applicable to adult prisoners in the State of Illinois.[8] Section 504.610 states that:

> Confined persons *may* be confined as a result of disciplinary hearing, while awaiting transfer to another facility for security reasons, pending investigation or disciplinary hearing, or for control purposes.

> \* \* \* \* \* \*

> (2) Any committed person charged with a violation of Department rules of behavior shall be given notice of the charge including a statement of the misconduct alleged and of the rules this conduct is alleged to violate.

> (3) Any person charged with a violation of rules is entitled to a hearing on that charge at which time he [or she] shall have an opportunity to appear before and address the person or persons deciding the charge.

> (4) The person or persons determining the disposition of the charge may also summon to testify any witnesses or other persons with relevant knowledge of the incident. The person charged may be permitted to question any person so summoned.

> (5) If the charge is sustained, the person charged is entitled to a written statement of the decision by the persons determining the disposition of the charge which shall include the basis for the decision and the disciplinary action, if any, to be imposed.

---

7. Pertinent sections of Ill.Rev.Stat. ch. 38, para. 1003–8–7 provide:

> *Disciplinary Procedures.* (a) All disciplinary action shall be consistent with this Chapter. Committed persons shall be informed of rules of behavior and conduct, the penalties for violation thereof, and the disciplinary procedure by which such penalties may be imposed. Such rules, penalties and procedure shall be posted and issued to the persons committed.

> \* \* \* \* \* \*

> (3) No person in the Adult Division may be placed in solitary confinement for disciplinary reasons for more than 15 consecutive days or more than 30 days out of any 45 day period except in cases of violence or attempted violence committed against another person or property when an additional period of isolation for disciplinary reasons is approved by the chief administrative officer.

> \* \* \* \* \* \*

> (e) In disciplinary cases which may involve the imposition of disciplinary isolation, the loss of good time credit or eligibility to earn good time credit, or a change in work, education, or other program assignment of more than 7 days duration, the Director shall establish disciplinary procedures consistent with the following principles:

8. Appellant's brief cites Ill.Admin.Code, tit. 20, § 504.430 in support of his claim that the regulation creates a liberty interest. This subsection applies only to individuals facing temporary confinement while receiving community-based treatment, and not to adult offenders committed to an Illinois state prison.

Illinois Admin.Code, tit. 20, § 504.610 (1985) (emphasis added). This provision allows the State to place a prisoner in disciplinary segregation pending investigation.[9] The regulation does not employ language of a mandatory nature, such as "shall," "will," or "must" as was the case in *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871. The regulation's permissive language does not create a protected liberty interest. *Mathews*, 779 F.2d at 414. We conclude that Illinois' administrative regulations and statutory provisions do not create a liberty interest of the kind Cain asserts. Accordingly, we affirm that portion of the district court's order.

### B.

■ Finally, Cain argues that his allegations regarding the inadequacy of his Adjustment Committee proceedings established a genuine issue of fact, and that the district court erred in granting the defendants' motion for summary judgment. The due process requirements for prison disciplinary hearings are set forth in *Wolff v. McDonnell*:

1. Written notice of the charge against the prisoner, given at least twenty-four hours prior to the hearing.

2. The right to appear in person before an impartial hearing body.

3. The right to call witnesses and to present documentary evidence, when to do so will not unduly jeopardize institutional safety or correctional goals.

4. A written statement of reasons for the disciplinary action taken.

418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). Absent a denial of these due process rights, an allegation that a prison disciplinary committee's findings are not supported by the evidence does not require *de novo* review of those proceedings. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir.1984) (stating that "[f]ederal courts generally will not entertain requests for *de novo* review of the

disciplinary committee's factual findings, but will merely consider whether the decision of the committee is supported by 'some facts.' "). The district court first analyzed the Adjustment Committee's proceedings and found that the Committee followed the required procedures. Second, the court concluded that there was evidence which supported the Committee's findings. Accordingly, because the Committee's findings were supported by "some" evidence, the district court entered summary judgment in favor of the defendants.

■ Even where proceedings are not otherwise constitutionally deficient, they may be invalidated by evidence that they were retaliatory in nature. "The observance of procedural formalities cannot render valid an infringement upon inalienable constitutional rights." *Shango v. Jurich*, 681 F.2d 1091, 1098 n. 13 (7th Cir.1982). *See also Williams*, 837 F.2d at 309 n. 7 (even where accorded broad discretion to transfer a prisoner, transfer may not be used as retaliation for an inmate's exercise of constitutional rights). In this case, the district court did not consider Cain's claim that the Committee's proceedings were wholly retaliatory in nature. If the district court finds on remand that the prison administrators disciplined Cain in retaliation for his constitutionally protected speech, this would invalidate the Committee's proceedings despite compliance with due process requirements.

In conclusion, the district court's grant of summary judgment in favor of the defendants is REVERSED in part and AFFIRMED in part, and the case is REMANDED for proceedings consistent with this opinion.

---

9. *See also* § 504.630, which governs confinement pending investigation:

    Committed persons placed in confinement pending completion of an investigation shall

be provided with the same conditions and services as those required for the segregation unit.

Ill.Admin.Code, tit. 20, § 504.630.