**Rudolph L. LUCIEN, Plaintiff,**

v.

**Howard A. PETERS III,
et al., Defendants.**

No. 93 C 6380.

United States District Court,
N.D. Illinois, E.D.

Jan. 12, 1994.

James A. Cherney, Chicago, IL, for plaintiff.

Roland W. Burris, Wallace C. Solberg, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Rudolph Lucien ("Lucien"), represented by counsel,[1] has filed a six-count Complaint

---

1. This is not the most-frequently-encountered type of prisoner lawsuit, which is prepared pro se and is sought to be filed in forma pauperis. In such situations this Court first determines whether the complaint surmounts the "frivolousness" threshold defined by *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) and most recently reconfirmed in *Denton v. Hernandez*, —— U.S. ——, —— –– ——, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992) and then, if the answer is "yes," it almost invariably appoints a lawyer to represent the plaintiff pro bono publico. In this instance this Court's colleague Honorable Suzanne Conlon appointed counsel to represent Lucien in such an initially pro se case (*Lucien v. Johnson*, Case No. 93 C 400, 1993 WL 535436 (1993)). That same lawyer, a member of a major Chicago law firm, then

against Illinois Department of Corrections ("Department") Director Howard Peters III and Stateville Correctional Center ("Stateville") Warden Salvador Godinez, suing each of them in his individual *and* his official capacity under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of Lucien's constitutional rights. Both Peters and Godinez have moved to dismiss the Complaint on several grounds, and that motion is fully briefed. For the reasons stated in this memorandum opinion and order, the motion is granted in part and denied in part.

### Lucien's Allegations

As our Court of Appeals has said in *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir.1985), dealing with a prisoner's Section 1983 complaint under comparable circumstances:

> Benson's amended complaint, which was drafted by an attorney, is not entitled to the protection afforded *pro se* complaints under *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Rather, the sufficiency of the amended complaint is to be appraised under the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 42, 45–46, 78 S.Ct. 99, 100, 101–102, 2 L.Ed.2d 80 (1957):
>
> > [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

For that purpose Lucien's well-pleaded allegations must be accepted as true, with all reasonable inferences drawn in his favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987) (per curiam)).

Lucien asserts that Peters and Godinez transferred him from Stateville to Pontiac Correctional Center ("Pontiac") in retaliation for his litigation activities—in that respect Lucien focuses particularly on the *Johnson* lawsuit referred to in n.1. That action is brought not against Peters or Godinez, but against three Commissioners of the Illinois

Court of Claims. Lucien claims in that action that his constitutional rights have been violated by delays in processing his pending cases in the Court of Claims.[2]

As for the present case, here is how Lucien's counsel describes the Complaint's allegations (Lucien Mem. 6–7):

(1) From 1980 to 1990, Plaintiff held a low escape risk status. (Complaint at ¶ 7).

(2) In 1990, Plaintiff's identity as a named Plaintiff in the *Inmate A* suit was revealed, even though such information was subject to a protective order. (Complaint at ¶ 9).

(3) In 1990, while at Pontiac, Plaintiff's escape risk status was raised to high and Plaintiff was subjected to repeated disciplinary infractions before he was able to secure a transfer out of Pontiac. (Complaint at ¶¶ 10, 11, 13).

(4) From August 8, 1990 to July 22, 1993, Plaintiff was incarcerated at the Menard Correctional Center and the Stateville Correctional Center, and received only one minor disciplinary infraction. (Complaint at ¶¶ 13–14).

(5) On March 8, 1993, while housed at Stateville, Plaintiff filed *pro se Lucien v. Johnson et al.*, 93 C 0400, 1993 WL 535436 (N.D.Ill.), an action against three Commissioners of the Illinois Court of Claims alleging various constitutional violations arising from the handling of Plaintiff's pending cases in the Illinois Court of Claims. (Complaint at ¶ 17).

(6) On July 11, 1993, Defendant's motion to dismiss was partially denied and they were ordered to respond to Plaintiff's complaint. (Complaint at ¶ 18).

(7) On June 15, 1993, the Court appointed Latham & Watkins to represent Plaintiff in his claim.

(8) On July 22, 1993, Latham & Watkins first appeared on Plaintiff's behalf and expressed an intention to pursue discovery in *Lucien v. Johnson.* (Complaint at ¶ 19).

(9) On the same day, Plaintiff's personal belongings were seized and Plaintiff was

proceeded to prepare the Complaint in this fee-paid action.

2. Those cases charge Department with the loss or destruction of personal property belonging to Lucien.

transferred back to Pontiac. (Complaint at ¶ 19).

(10) After or simultaneous with this transfer, Plaintiff was subjected to the following:

a. repeated, pretextual disciplinary sanctions;

b. relegation to a Segregation Unit;

c. demotion to C Grade Status;

d. destruction or loss of his personal belongings;

e. an increase in the distance from his appointed counsel in Chicago; and

f. death threats from gang members

(Complaint at ¶¶ 17–24).

As already indicated, this opinion will credit all those allegations that are properly viewed as "well-pleaded" (more on this subject later).

### Equal Protection Claims

■ Counts IV through VI of the Complaint charge that the conduct ascribed to Peters and Godinez violated Lucien's right to equal protection of the laws. This Court has always found it troublesome that the Equal Protection Clause—which does after all speak in terms of discrimination against individuals ("nor shall any State . . . deny to *any person* within its jurisdiction the equal protection of the laws")—has somehow acquired a construction that forbids only class-based discriminatory treatment (see, e.g., this Court's opinion in *Lucas v. Village of La-Grange,* 831 F.Supp. 1407, 1417–18 (N.D.Ill. 1993)). But that is the message that our Court of Appeals has delivered in unambiguous terms (*Albright v. Oliver,* 975 F.2d 343, 348 (7th Cir.1992)).

This Court cannot on its own conduct a fiftieth anniversary celebration of the Supreme Court's opinion in *Snowden v. Hughes,* 321 U.S. 1, 7, 8, 10, 64 S.Ct. 397, 400, 401, 402, 88 L.Ed. 497 (1944), which teaches a different reading of the Equal Protection Clause. Instead jurisprudential considerations require that the path that must be followed here is that marked out by our Court of Appeals. Accordingly Counts IV, V and VI are dismissed.

### Due Process—Declaratory Relief

■ Complaint Count I asks this Court to issue an order "[d]eclaring that the complained of actions of the Defendants deny Plaintiff his right to due process of law under the Fourteenth Amendment to the United States Constitution." Because that count is asserted against Peters and Godinez in their official capacities—that is, in legal effect against the State of Illinois itself—it runs directly afoul of *MSA Realty Corp. v. State of Illinois,* 990 F.2d 288, 295 (7th Cir.1993).

It should be emphasized that Count II (which is also an official-capacity claim) seeks injunctive relief grounded on the identical factual claim, and that count asks for the entry of an order:

(1) Enjoining the continued violation of Plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution through the detention of Plaintiff at Pontiac Correctional Center;

(2) Ordering the immediate transfer of Plaintiff to the Stateville Correctional Center with a restoration of Plaintiff to A Grade Status and a restoration of Plaintiff to low escape risk status;

(3) Awarding Plaintiff his costs in pursuing this action together with reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(4) Granting such other and further relief as this Court deems proper.

Thus the only potential incremental function of Count I is one that is barred by the Eleventh Amendment under the square precedent of *MSA Realty.* Accordingly, Count I is also dismissed.

### Due Process—Damages and Injunctive Relief

■ As just indicated, Count II seeks injunctive relief against Peters and Godinez in their official capacity—effectively against the State of Illinois. Count III asks that Peters and Godinez personally pay damages for Lucien's claimed constitutional deprivations. Both of those claims must stand or fall in terms of whether or not Lucien's allegations of retaliatory conduct will be credited.

Although the conventional wisdom is that judges are not to make judgments about credibility in evaluating the sufficiency of complaints under Fed.R.Civ.P. ("Rule") 12(b)(6), that is tempered by the equally conventional wisdom—based on the concept that only "well-pleaded" allegations must be taken as true—that purely conclusory allegations need not be accepted as the gospel truth. In the context of Section 1983 retaliatory treatment cases, that has produced such opinions as *Benson,* 761 F.2d at 342, which have upheld the dismissal of complaints because the *facts* alleged there (accepted as true) did not support the inference that plaintiffs had been treated adversely in retaliation for their exercise of constitutionally-protected rights. In *Benson* (as here) the complaint had *alleged* retaliation, but that was not viewed by our Court of Appeals as an allegation that had to be credited as such. As that Court has since stated in *Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir.1988):

> We emphasize, however, that not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred. *Murphy v. Lane,* 833 F.2d 106, 108–09 (7th Cir.1987) (holding that the plaintiff's complaint "set forth a chronology of events from which retaliatory animus on the part of defendants could arguably be inferred" sufficient to overcome a motion to dismiss). *See also Benson v. Cady,* 761 F.2d 335, 342 (7th Cir.1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient"). Barring such a chronology, dismissal may be appropriate in cases alleging retaliatory discipline.

Here a review of the Complaint as summarized by Lucien's lawyer (quoted earlier in this opinion) reveals the tenuous nature of his retaliation claim. Quite apart from the fact that the 1990 events to which he refers

would be outlawed by the two-year statute of limitations as the basis for a Section 1983 claim (and indeed Lucien and his counsel do not purport to bring those events forward for that purpose), those events cannot support the current retaliation claim·against Peters and Godinez. If those two officials really had retaliation against Lucien in mind because of his conduct in 1990, there was plenty of opportunity for them to have done so long before the July 1993 events of which Lucien now complains (that was the very point made in *Benson,* 761 F.2d at 342). So this opinion will look instead at the 1993 events in light of the case law.

Lucien would have it that his March 1993 filing of a lawsuit against three Court of Claims Commissioners—and not against Peters or Godinez—roused vengeful thoughts, triggering vengeful action, on the part of the latter. Or perhaps Lucien contends that Judge Conlon's July 11 order denying the motion to dismiss the *Johnson* case and ordering the Commissioners to answer triggered the allegedly retaliatory transfer.[3] Both of those things certainly require a substantial stretch to provide reasonable support for an inference of retaliation (as is needed under *Benson, Cain* and like cases).

Lucien Mem. 8 tries to link the two events (the *Johnson* litigation and his later transfer to Pontiac) together:

> Suffice it to say that Plaintiff will prove that employees of the Department of Corrections knew about and referred to Plaintiff's claims in *Lucien v. Johnson* and his prosecution of that action.

And it is true that this is not the occasion to treat Lucien as though the Rules had enacted a fact-pleading regime—as *Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962, 963 (7th Cir.1992) (citations omitted) has said:

> Unlike insurance contracts, complaints are construed favorably to their drafters. Rule 8 establishes a system of notice pleading. A complaint need not narrate all

---

3. It strains credulity also to suggest (as Lucien's counsel seems to) that counsel's July 22 initial in-court appearance and "express[ion of] an intention to pursue discovery" was a triggering mechanism for the same-day transfer of Lucien to Pontiac. It is perhaps only too human to have such an exaggerated view of one's own importance—to say nothing of the kind of instantaneous communication-followed-by-action scenario involved in such a suggestion.

relevant facts or recite the law; all it has to do is set out a claim for relief. Over and over, appellate courts insist that a complaint not be dismissed unless no relief may be granted "under any set of facts that could be proved *consistent* with the allegations."

All the same, Lucien and his counsel must realize that respondeat superior principles do not apply under Section 1983 (*Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978))—so the Memorandum's quoted reference to "employees of the Department of Corrections" cannot lead to an inference of the necessary personal involvement by Peters and Godinez (see, e.g., *Moore v. Indiana,* 999 F.2d 1125, 1128 (7th Cir.1993)), unless of course those employees were shown to have communicated their knowledge to Peters and Godinez.

Despite the thinness of the connection sought to be relied on by Lucien, for the present Counts II and III will stand. It would seem that early discovery should focus on the representation by Lucien's counsel quoted in the preceding paragraph. If no predicate for the attenuated inference is established, it may be in order to revisit the issue. In the meantime Peters and Godinez are ordered to answer those surviving counts.

### Conclusion

Peters and Godinez are right in seeking the dismissal of Counts I, IV, V and VI—their motion to dismiss those counts is granted. But their motion is denied as to Counts II and III, and they are ordered to answer those counts on or before January 31, 1994.