69 F.3d 539
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Rudolph L. LUCIEN, Plaintiff-Appellant,
v.
Howard A. PETERS, III, and Salvador A. Godinez, Defendants-Appellees.
 No. 95-1141.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 18, 1995.[1]
Decided Oct. 23, 1995.
 
 Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Rudolph L. Lucien filed a civil rights action, 42 U.S.C. Sec. 1983, alleging that defendant prison officials at Stateville Correctional Center in Illinois violated his Fourteenth Amendment rights by retaliating against him for filing other lawsuits against various prison officials, and for helping other inmates file lawsuits. For the reasons stated in the attached Memorandum Opinion, the judgment of the district court is AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 2
 Rudolph L. Lucien, Plaintiff,
 
 
 3
 v.
 
 
 4
 Howard A. Peters III, and Salvador Godinez, in Their
 
 
 5
 Individual and Official Capacities Jointly and
 
 
 6
 Severally, Defendants.
 
 No. 93 C 6380
 Docketed Dec. 12, 1994
 MEMORANDUM OPINION
 
 7
 COAR, District Judge.
 
 
 8
 The matter before the Court is defendants Howard A. Peters' III and Salvador A. Godinez's (collectively the "Defendants") Motion for Summary Judgment on plaintiff Rudolph L. Lucien's Complaint pursuant to Fed.R.Civ.P. 56. The six-count Complaint alleges that the Defendants, in their capacities as Director of the Illinois Department of Corrections and Warden of the Stateville Correctional Center ("Stateville"), respectively, violated 42 U.S.C. Sec. 1983. After having reviewed the pleadings, memoranda, and evidence presented, the Court grants Defendants' motion for summary judgment for the reasons stated in this memorandum opinion.
 
 BACKGROUND
 
 9
 Lucien's Complaint in this action was filed on October 21, 1993. The Complaint has six counts alleging retaliatory treatment at the hands of the Defendants. Lucien requested a declaratory judgment, an injunction prohibiting Defendant's continued alleged violations, and damages pursuant to the Due Process and Equal Protection clauses of the Fourteenth Amendment.
 
 
 10
 On November 23, 1993, Defendants moved to dismiss the Complaint on several grounds. On January 12, 1994, Judge Milton Shadur granted the motion with respect to all Equal Protection counts but denied the motion with respect to the injunction and damages components of the Due Process counts.[1] Judge Shadur further concluded that certain events allegedly occurring in 1990 "cannot [sic] support the current retaliation claim against Peters and Godinez." Lucien v. Peters, 840 F.Supp. at 594. Thus, this Court will only address those events that Lucien alleges occurred after 1990.
 
 
 11
 On August 1, 1994, Defendants moved for summary judgment on the remaining two counts. Judge Shadur set a briefing schedule. That motion is now fully briefed and ripe for decision.[2]
 
 FACTUAL BACKGROUND
 
 12
 Plaintiff Rudolph Lucien is an inmate of the Illinois Department of Corrections, and it currently incarcerated at the Menard Correctional Center. Defendant Howard Peters III ("Peters") has been the Director of the Illinois Department of Corrections since March 27, 1991.[3] Defendant Salvador Godinez has been the Warden of the Stateville Correctional Center since September of 1991. Both parties agree that all of the above characterizations are true. (Complaint paragraphs 1-3; Answer paragraphs 1-3).
 
 
 13
 From August 8, 1990 to October 1, 1993, Lucien was incarcerated at the Menard Correctional Center. From October 1, 1992 to July 22, 1993, Lucien was incarcerated at the Stateville Correctional Center. (Complaint p 13; Answer p 13).
 
 
 14
 In the first week of October, 1992, Lucien alleges that Godinez explained that he knew that Lucien was a frequent litigator, but that he would not "put up with" any litigation from Lucien while he was at Stateville. (Lucien Deposition, Defendant's Exhibit 1 at 80-81). Godinez vehemently denies that he made such statements. (Defendant's Memo. in Support of Summary Judgment at 12; Godinez Deposition, Defendant's Exhibit 3 at 20-21). Godinez further denies that he would have made such statements, and contends that he encourages prisoners to "come after him" through the courts rather than with a weapon. (Id.).
 
 
 15
 On March 8, 1993, Lucien filed the pro se action Lucien v. Johnson et. al., 93 C 0400 (N.D.Ill.) (Conlon, J.) (action against three Commissioners of the Court of Claims for alleged constitutional violations arising out of the handling of Lucien's pending cases in the Illinois Court of Claims). (Complaint p 17; Answer p 17).
 
 
 16
 On June 11, 1993, Defendant's motion to dismiss Lucien v. Johnson et. al. was partially denied and Defendants were ordered to respond to Lucien's complaint. (Complaint p 18; Answer p 18).
 
 
 17
 On June 15, 1993, Judge Conlon appointed Latham & Watkins to represent Lucien in Lucien v. Johnson et. al., (Complaint p 18; Answer p 18).
 
 
 18
 Sometime between June 25, 1993 and June 29, 1993, Lucien alleges he experienced difficulty contacting his newly-appointed attorney. (Plaintiff's Statement of Additional Facts p 2). Lucien alleges he spoke with Godinez regarding this problem, and Godinez helped him gain telephone privileges to call counsel. (Id.). During this conversation, Lucien alleges he showed Godinez a copy of the order appointing counsel and a copy of a minute order denying the Johnson defendants' motion to dismiss the complaint. (Id.). Godinez denies these allegations and states that he has no memory of such a conversation. (Defendant's Response to Lucien's 12(N) Statement p 6).
 
 
 19
 The Illinois Department of Corrections Administrative Directive 105A titled "Identifying and Monitoring Extremely High Escape Level Risks" requires that inmates with extremely high escape risk levels be reviewed every six months for possible transfer for security reasons. (Defendant's Local R. 12(M) Stmt. Uncontested Facts p 11; Defendant's Exhibit 22). Lucien claims to have no knowledge of this directive. (Plaintiff's Response to Defendant's R. 12(M) Stmt. Uncontested Facts p 2).
 
 
 20
 On July 12, 1993, Jerome Springborn, Assistant Warden of Programs at Stateville, sent Diane Jockisch, Transfer Coordinator for the Illinois Department of Corrections, a message via computer mail regarding the possible transfer of two inmates at Stateville: Darnell Jones, N22032, and Rudolph Lucien, A76089. (Defendant's Local R. 12(M) Stmt. Uncontested Facts p 17; Defendant's Exhibit 7). The two inmates were categorized in the message as "extremely high escape risk." (Id.). Springborn was not directed by Godinez to transfer either of the inmates, rather, he generated the message as part of his regular duties. (Springborn Affidavit paragraphs 3-5, Defendant's Exhibit 5). The Transfer Office, run by Jockisch, has final say on whether the transfer of a prisoner occurs. (Jockisch Deposition. at 32, Defendant's Exhibit 2). A warden could not overrule Jockisch's decision whether to transfer a prisoner. (Jockisch Deposition. at 32, Defendant's Exhibit 2). Lucien has no knowledge of these activities or procedures. (Plaintiff's Response to Defendant's R. 12(M) Stmt. Uncontested Facts p 2).
 
 
 21
 On July 20, 1993, Jockisch responded to Springborn's message via computer mail. (Defendant's Local R. 12(M) Stmt. Uncontested Facts p 18; Defendant's Exhibit 8). Jockisch stated:
 
 
 22
 Pontiac and Stateville have both requested to move 2 E-high escape risks.... From Pontiac to Stateville, 1. Richard McCue, N-46136.... 2. Daniel Duane, N36278. From Stateville to Pontiac. 1. Darnell Jones, N22032.... 2. Rudolph Lucien, A76089.... If you know of any reasons there inmates should not move, please advise. Thank you.
 
 
 23
 Lucien has no knowledge of this message. (Plaintiff's Response to Defendant's R. 12(M) Stmt. p 2).
 
 
 24
 On July 21, 1993, Lucien was told by Lt. Carter to pack his property because he was going to be transferred the next day. (Defendant's Local R. 12(M) Stmt. Uncontested Facts Supp.Def's Motion Summ.J. p 20; Plaintiff's Response Defendant's R. 12(M) Stmt.Facts and Stmt. of Additional Facts p 1).
 
 
 25
 On July 22, 1993, Latham & Watkins first appeared on Lucien's behalf and expressed an intention to pursue discovery in Lucien v. Johnson et al., (Complaint p 19; Answer p 19). On that day, Judge Conlon set a schedule for filing discovery and dispositive motions in that matter.
 
 
 26
 On July 22, 1993, Lucien was transferred from Stateville to Pontiac Correctional Center. (Complaint p 19; Answer p 19). Also on July 22, 1993, all of the other inmates mentioned in the Springborn-Jockisch messages were transferred. (Defendant's Exhibit 9). Lucien claims to have no knowledge of the other transfers. (Plaintiff's Response to Defendant's R. 12(M) Stmt. Uncontested Facts p 2).
 
 
 27
 From July 22, 1993 to October 25, 1993, Lucien was incarcerated at the Pontiac Correctional Center.
 
 
 28
 On August 28, 1993, Lucien wrote a Grievance request to be removed from Pontiac "due to the risk to my personal safety." Lucien alleged in the Grievance that "the inmate gangs assigned to such cellhouse had put a 'hit' on me." (Defendant's Exhibit 13).
 
 
 29
 Lucien received disciplinary tickets on August 27, 1993, September 7, 1993, and September 13, 1993 for refusing to accept a cell assignment. (Defendant's Local R. 12(M) Stmt. Uncontested Facts p 24; Plaintiff's Response to Def's R. 12(M) Stmt. Facts and Stmt. of Additional Facts p 1; Defendant's Exhibits 16-19). While at Pontiac, Lucien chose to go to segregation by refusing these several cell assignments in the general population. (Defendant's Local R. 12(M) Stmt. Uncontested Facts p 23; Plaintiff's Response to Def's R. 12(M) Stmt. Facts and Stmt. of Additional Facts p 1). Lucien knew that by refusing to accept a cell assignment, he would be placed in segregation. (Id.). Lucien did not request protective custody. (Id.).
 
 
 30
 On September 20, 1993, Lucien received a disciplinary ticket for striking a medical technician. (Defendant's Local R. 12(M) Stmt. Uncontested Facts p 2; Plaintiff's Response to Def's R. 12(M) Stmt. Facts and Stmt. of Additional Facts p 1; Defendant Exhibit 20).
 
 
 31
 On October 25, 1993, Lucien was transferred from Pontiac to Menard Correctional Center.
 
 
 32
 On November 3, 1993, Lucien wrote a Grievance stating that the October 25, 1993 transfer was completed by order of defendant Peters and in retaliation for Lucien's litigation activities. (Defendant Exhibit 14).
 
 
 33
 Lucien has no knowledge of any actions defendant Godinez allegedly took regarding Lucien's transfer, nor did the two have a discussion regarding the transfer. (Defendant's Local R. 12(M) Stmt. Uncontested Facts p 31; Plaintiff's Response to Def's R. 12(M) Stmt. Facts and Stmt. of Additional Facts p 1).
 
 CONCLUSIONS OF LAW
 
 34
 As a preliminary matter, the Court accepts Plaintiff's voluntary dismissal of defendant Howard Peters III from this action. Thus, the Court will not address any of the allegations as they relate to Peters.
 
 Standards for Summary Judgment
 
 35
 Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis, 806 F.2d 146, 149 (7th Cir.1986). The movant has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). If the moving party meets this burden, the non-moving party must then respond by setting forth specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.) cert. denied 464 U.S. 960 (1983).
 
 
 36
 Thus, Godinez, the only remaining defendant, must show that the evidence is so one-sided in his favor that there is no genuine issue requiring a trial, and he is entitled to summary judgment against Lucien as a matter of law. In other words, for the Court to grant summary judgment to Godinez, it must appear beyond doubt that Lucien can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 42, 45-46 (1957); Benson v. Cady, 761 F.2d 335, 338 (7th Cir.1985). If Godinez demonstrates that there is no genuine issue of material fact, Lucien must prove evidence of specific factual disputes. Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir.1988).
 
 Standard For 42 U.S.C. Sec. 1983 Actions
 
 37
 The elements of a cause of action under section 1983 are similar to a tort damage action although the breached duty is a constitutional violation. Benson v. Cady, 761 F.2d 335, 339 (7th Cir.1985); Lossman v. Pekarske, 707 F.2d 288, 290 (7th Cir.1983). The plaintiff must prove:
 
 
 38
 (1) a constitutionally recognized duty on the part of the state to conform to a certain standard of conduct for the protection of others against an unreasonable risk of harm; (2) a failure to conform to this standard; (3) a causal connection between the state's failure and the plaintiff's injury; (4) actual damage.
 
 
 39
 Benson v. Cady, 761 F.2d at 339, citing Johnson v. Byrne, 738 F.2d 1443, 1446 (7th Cir.1983) (duty); Parrett v. City of Connersville, Ind., 737 F.2d 690, 695 (7th Cir.1984) cert. dismissed 469 U.S. 1145 (1985) (causal connection); Lossman v. Pekarske, 707 F.2d at 290-91 (actual damage).
 
 
 40
 In section 1983 actions alleging retaliatory behavior (which obviously allege a violation of a constitutional duty) the ultimate fact of retaliation for the exercise of a constitutionally protected right can only rarely be supported with direct evidence of intent that can be pled in a complaint. Benson v. Cady, 761 F.2d 335, 342 (7th Cir.1985). The Seventh Circuit has concluded that the plaintiff prisoner may instead allege a chronology of events from which retaliation may plausibly be inferred. Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir.1987); Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir.1986); Benson v. Cady, 761 F.2d at 342.
 
 The Alleged Chronology
 
 41
 The chronology of events that the Court finds in the pleadings and Local Rule 12(M) and (N) statements is as follows, narrowed to the events following 1990 pursuant to Judge Shadur's opinion Lucien v. Peters, 840 F.Supp. 591 (Jan. 12, 1994):
 
 
 42
 1. October 1992: In the first week of October of 1992, Lucien alleges Warden Godinez explained that he knew that Lucien was an extensive litigator, but he would not "put up with" any litigation from Lucien while he was at Stateville.
 
 
 43
 2. March 8, 1993: Lucien filed Lucien v. Johnson, et al., 93 C 400 (N.D.Ill.) (Conlon, J.) (action against three Commissioners of the Court of Claims for alleged constitutional violations arising out of the handling of Lucien's pending cases in the Illinois Court of Claims) on March 8, 1993.
 
 
 44
 3. June 15-29, 1993: Lucien alleges that Godinez became aware of Lucien v. Johnson, et al. some time between June 15, 1993 and June 29, 1993 because he and Godinez had a conversation regarding Lucien's difficulties in obtaining telephone privileges to contact his newly-appointed attorney in that case. Lucien alleges that Godinez assisted Lucien in telephoning his attorney.
 
 
 45
 4. June 11, 1993: On June 11, 1993, Defendant's motion to dismiss Lucien v. Johnson, et. al. was partially denied and Defendants were ordered to respond to Plaintiff's complaint.
 
 
 46
 5. June 15, 1993: On June 15, 1993, the Court appointed Latham & Watkins to represent Plaintiff in the Johnson litigation.
 
 
 47
 6. July 21, 1993: On July 21, 1993, Lucien was told by Lt. Carter to pack his belongings because he was to be transferred the next day.
 
 
 48
 7. July 22, 1993: On July 22, 1993, Latham & Watkins appeared on Plaintiff's behalf and expressed the intention to pursue discovery in Johnson.
 
 
 49
 8. July 22, 1993: On July 22, 1993, Lucien's personal belongings were seized and he was transferred back to Pontiac.
 
 
 50
 9. July 22, 1993: Lucien alleges that some of his personal belongings were stolen or destroyed during his July 22, 1993 transfer from Stateville to Pontiac. However, he admits that he saw the box into which his belongings were placed immediately prior to his departure from Stateville, and the box was intact.
 
 
 51
 10. July 22, 1993: Lucien alleges that the driver of the vehicle that transported him from Pontiac to Stateville threatened him by saying, "Wait until we get you back to Pontiac."
 
 
 52
 11. July 22, 1993 and thereafter: After or simultaneous with this transfer the following occurred while Lucien was at Pontiac:
 
 
 53
 a. Lucien was disciplined allegedly pretextually;
 
 
 54
 b. As a consequence of refusing the cell assignments, Lucien was assigned to a Segregation Unit;
 
 
 55
 c. Lucien was demoted to C grade status;
 
 
 56
 d. Prison gangs threatened Lucien that a "hit" had been ordered for him;
 
 
 57
 e. Lucien paid $.90 for legal photocopying and $12.32 for legal postage while at Pontiac because Pontiac has a policy to charge inmates for the photocopying and postage of legal documents. Stateville does not have such a policy, and thus Lucien alleges the transfer hampered his litigation activities.
 
 Analysis
 
 58
 The Court concludes that this chronology is insufficient to establish an inference of retaliation by Godinez. The Court will address each set of factual allegations individually to show why Lucien's allegation of retaliatory treatment must fail.
 
 
 59
 Point 1: Warden Godinez's alleged statement
 
 
 60
 Warden Godinez's alleged statement might tend to show the beginnings of a retaliatory pattern. Even though Godinez vehemently maintained in his deposition that he did not and would not have made such a statement, the Court must take Lucien's allegation as true for purposes of this motion. This is a factual dispute. However, some factual dispute will not prevent granting summary judgment if the dispute is not a genuine issue of material fact. Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). Godinez's alleged statement, made nine months before the transfer at issue, is rather attenuated to allow an inference of retaliation to be drawn. Benson v. Cady, 761 F.2d 335, 342 (Prisoner who filed a lawsuit five months before an alleged retaliatory transfer did not prove sufficient facts to show that the transfer was retaliatory). However, Lucien attempts to connect the statement with the June, 1993 events.
 
 
 61
 Assuming Lucien's version of the facts is true, Godinez knew of the Johnson litigation at the latest some time between June 15 and June 29, 1993. If that were true, then the July 22, 1993 transfer could arguably have been based on his new knowledge that Lucien was litigating at the facility. However, the Seventh Circuit has clearly stated that the alleged chronology must allege a chronology of events "from which retaliation may reasonably be inferred." Cain v. Lane, 857 F.2d at 1143 n. 6; Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir.1987). The Court concludes that Godinez's mere knowledge of the Johnson litigation (to which no one in the Illinois Department of Corrections, much less Godinez was a party) and Lucien's subsequent transfer a month later does not give rise to the reasonable inference that Godinez was retaliating against Lucien.
 
 
 62
 Further, evidence that is merely colorable or is not significantly probative does not foreclose summary judgment. Respect Inc. v. Committee on the Status of Women, 781 F.Supp. 1358, 1367 (N.D.Ill.1992). The Court concludes that the alleged statement is the sum total of Warden Godinez's questionable behavior, and that statement alone cannot support an inference of retaliation.
 
 
 63
 Points 2--5, and 7: The Lucien v. Johnson Litigation
 
 
 64
 All proceedings in Lucien v. Johnson and its discovery were not relevant to Godinez. The defendants in that case were Commissioners of the Court of Claims. Godinez was not a defendant in that action, nor did the subject matter pertain to him or his facility; that action was against Commissioners of the Court of Claims. It is of mere tangential importance that the facts in the underlying action in the Court of Claims occurred partially at Stateville. There would be no apparent reason for Godinez to care whether the Johnson action went forward other than general antipathy toward prisoner litigation. Occurrences in the Johnson litigation do not give rise to a reasonable inference of retaliation even assuming that Godinez made the October 1992 statement attributed to him by Lucien. The Court is not required to draw every conceivable inference from the record--only those that are reasonable. Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d at 236. The Court concludes that Lucien's transfer to Pontiac, which was decided in the Jockisch-Springborn computer messages, could not reasonably be related to the Johnson litigation, nor could it support an inference of retaliation.
 
 
 65
 Indeed, Lucien's initial allegation that his July 22, 1993 transfer was initiated by his counsel in Lucien v. Johnson expressing the intention to go forward with discovery in that case is misplaced. First, Lucien admits that he knew of his impending transfer to Pontiac on July 21, 1993, one day before the hearing at issue took place. Second, Godinez had nothing to do with the case, and therefore it is unlikely that he even knew about the hearing. Lucien alleges that Godinez knew about the Johnson litigation because Godinez helped Lucien obtain telephone privileges after Judge Conlon appointed counsel on July 15, 1993. Lucien attempts to argue that the knowledge of the case (1) caused Godinez to attempt to make good on his threat to not "put up with" litigation from Lucien and (2) the transfer was precipitated by the July 22, 1993 hearing requesting discovery.
 
 
 66
 Accepting Lucien's version of the facts as true, as the Court must do for the purposes of this motion, a reasonable inference still may not be drawn that Godinez acted in retaliation by transferring Lucien to Pontiac. The knowledge of a pending case will not give rise to a reasonable inference that Godinez knew about the hearing on July 22, 1993, as Lucien contends. Lucien was transferred pursuant to an Illinois Department of Corrections policy for periodic review of extremely high escape risk inmates for possible transfer.
 
 Point 8: Lucien's Transfer
 
 67
 Lucien alleges in his Local Rule 12(N) Statement that the Jockisch-Springborn messages regarding Lucien's transfer to Pontiac could not have been generated without Godinez's approval. Lucien continues "[t]he fact that others may have approved such decision, either before or after such decision, is completely irrelevant to the issue of whether Godinez possessed a retaliatory animus when he transferred Lucien to Pontiac." Lucien attempts to argue that initial impetus for transferring Lucien to Pontiac rested securely with Godinez. However, even if Godinez approved the transfer, that does not lead to the conclusion that he initiated the transfer. Indeed, Godinez testified in his deposition that he approves all transfers of extremely high escape risk prisoners personally, but that fact does not prove that he initiated Lucien's transfer. Lucien's 12(N) statement points to Jockisch's deposition testimony that all inmate-requested transfers must be approved by the warden where the prisoner is currently housed before the transfer request reaches her office. However, that testimony is not relevant to this situation, which was an involuntary transfer pursuant to Directive 105A. Lucien also attempted to argue that Springborn was acting on Godinez's behalf when Lucien was transferred, and thus Godinez should be held liable for Springborn's actions. However, as Judge Shadur made painfully clear in his previous opinion in this case, respondeat superior does not apply to Sec. 1983 proceedings. Monell v. Dept. of Social Services, 436 U.S. 658, 691-94, 98 (1978); Riordan v. Kempiners, 831 F.2d 690, 695 (7th Cir.1987); McKinnon v. City of Berwyn. Thus, the Court cannot give weight to Springborn's actions in constructing a chronology of retaliation by Godinez.
 
 
 68
 Lucien also alleges that because there was no record of his transfer to Pontiac, in violation of 730 I.L.C.S. 5/3-8-4, the transfer must have been retaliatory. Although the Court agrees that there seems to be no record of the transfer, which would be a violation of Illinois law, that fact alone does not give rise to the inference of retaliation. Indeed, Jockisch testified that there are many occasions in which no record is made of a prisoner transfer. Violation of Illinois law is not a de facto federal constitutional violation. Archie v. City of Racine, 847 F.2d 1211, 1216-17 (7th Cir.1988) ("Mere violation of a state statute does not infringe the federal Constitution.").
 
 
 69
 Point 9: Destruction of Lucien's Personal Belongings
 
 
 70
 The allegation that Lucien's property was destroyed during the move from Stateville to Pontiac on July 22, 1993 is fatally flawed: it is alleged against Godinez, the warden of Stateville, but Lucien admitted that his box of belongings was intact when it left Stateville. Thus, Godinez could not have personally tampered with the box. In addition, Lucien makes no allegation that Godinez was personally involved with the alleged destruction or theft. Because respondeat superior does not apply to section 1983 proceedings, an inference of retaliation against Godinez cannot be sustained. Monell v. Dept. of Social Services, 436 U.S. 658, 691-94, 98 (1978); Riordan v. Kempiners, 831 F.2d 690, 695 (7th Cir.1987); McKinnon v. City of Berwyn, 750 F.2d 1383, 1390 (7th Cir.1984).
 
 
 71
 Point 10: Alleged Threat of Transfer Driver
 
 
 72
 Although Lucien makes various allegations regarding other employees of the Illinois Correctional system, those complaints are not chargeable against Warden Godinez, the sole remaining defendant in this case. These allegations cannot create liability for Godinez because, Lucien cannot link him to the alleged statements, and respondeat superior does not apply to Sec. 1983 proceedings. Monell v. Dept. of Social Services, 436 U.S. 658, 691-94, 98 (1978); Riordan v. Kempiners, 831 F.2d 690, 695 (7th Cir.1987); McKinnon v. City of Berwyn, 750 F.2d 1383, 1390 (7th Cir.1984). Lucien has not attempted to draw a connection between Godinez and these alleged statements. Thus, the Court cannot give them weight in constructing a chronology of retaliation.
 
 
 73
 Point 11: Alleged Violations While at Pontiac
 
 
 74
 Lucien's allegations regarding his treatment while housed at Pontiac have the same flaws of being alleged against the wrong defendant and inapplicability of respondeat superior. Godinez, the Warden of Stateville, exerted no control over activities at Pontiac. Thus, Defendant Godinez cannot be held responsible for (1) the disciplinary tickets Lucien received at Pontiac; (2) the cell assignments at Pontiac to which Lucien objected; and (3) the alleged increased costs at Pontiac involved in Lucien pursuing his various litigations, as compared to the liberal policy at Stateville.
 
 CONCLUSION
 
 75
 The Court concludes that Lucien's allegations supporting counts II and III of his complaint are insufficient to withstand the Defendant's summary judgment motion. There is no genuine issue of material fact for the Court to try, thus the Court must grant summary judgment to the Defendant.
 
 
 76
 IT IS HEREBY ORDERED THAT: (1) Defendants' Howard A. Peters' III and Salvador Godinez's Motion for Summary Judgment is GRANTED as to counts II and III of plaintiff Rudolph L. Lucien's Complaint;
 
 
 77
 IT IS FURTHER ORDERED THAT: (2) Defendant Howard A. Peters III is DISMISSED from this action by consent of the parties;
 
 
 78
 IT IS FURTHER ORDERED THAT: (3) This case is hereby CLOSED, as no further matters remain to be resolved by the Court.
 
 
 79
 IT IS SO ORDERED.
 
 Dated: NOV 23, 1994
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Lucien v. Peters, 840 F.Supp. 591 (1994) (Shadur, J.)
 
 
 [2]
 This case was reassigned to the undersigned on November 8, 1994 by Order of the Executive Committee of the District Court of the Northern District of Illinois
 
 
 [3]
 Plaintiff consented to the dismissal of Peters from this action on page 1, footnote 1 of his Memorandum in Opposition to Defendant's Motion for Summary Judgment. Plaintiff therein contends that such dismissal has been communicated to the Defendants. As the dismissal of Peters has not been contested, the Court will dismiss this action as against Peters