29 F.Supp.2d 498 (1998)
Julie Kathleen BISBEE, a minor by her Natural Father and Next Friend, John BISBEE, Plaintiff,
v.
Charles REYNARD, Individually and in his Official Capacity as the State's Attorney of McLean County, Illinois; Steven Brienen, Individually and in his Official Capacity as Sheriff of McLean County, Illinois; Cliff Ocker, Individually and in his Official Capacity as Deputy Sheriff of McLean County, Illinois; Glen Wagner, Individually and in his Official Capacity as Deputy Sheriff of McLean County, Illinois; and Bonnie Serone, Individually and in her Official Capacity as the Sergeant in charge of the second shift of the McLean County Sheriff's Department, Defendants.
No. 97-1108.
United States District Court, C.D. Illinois.
April 14, 1998.
*499 John H Bisbee, Macomb, IL, Gregg N. Grimsley, LeAnna L. Karnopp, Carter & Grimsley, Peoria, IL, for Plaintiff.
Paul R. Welch, Costigan & Wollrab, Bloomington, IL, for Defendants.

ORDER
MIHM, Chief Judge.
This matter is before the Court on Defendants Reynard, Brienen, Ocker, Wagner & Serone's Motion for Summary Judgment, Plaintiff Bisbee's Motion for Partial Summary Judgment, Plaintiff Bisbee's Motion to Require Defendants to Respond, Plaintiff Bisbee's Motion to Strike, and Plaintiff Bisbee's Motion to Require Response to or Treat as Confessed.
Defendants' Motion for Summary Judgment [# 26] is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion for Summary Judgment [# 41] is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion to Require Defendants to Respond [# 48] is MOOT. Plaintiff's Motion to Strike [# 50] is DENIED. Plaintiff's Motion to Require Response to or Treat as Confessed [# 51] is DENIED. The only issue which remains for trial is damages owing Plaintiff on Count I.

Facts
At the time of the events in question, Plaintiff, Julie Kathleen Bisbee ("Bisbee"), was a 17-year-old junior in high school. On February 14, 1997, Bisbee attended a party *500 at the residence of Andrea Cottone which was attended by high school students. It is undisputed that alcohol was served; however, Bisbee maintains that she did not consume any.
At some point, Bisbee and three of her friends decided to leave the party. They attempted to leave the premises in a car driven by Melissa Mercier but, as the car was proceeding down the driveway approaching the junction of the driveway and the public road, deputies from the McLean County Sheriff's Department blocked the driveway. The officers at the scene were under the command of Defendant Deputy Glen Wagner ("Wagner"). He was backed up by Defendant Deputy Cliff Ocker ("Ocker"), who arrived on the scene immediately after Wagner. Defendant Sergeant Bonnie Serone, who was the shift commander, had directed Wagner to go to the party after the McLean County Sheriff's Office received a telephone call from the Normal Police Department which advised that they had received a 911 hang-up call from the Cottone residence.
Officers Wagner and Ocker approached the automobile in which Plaintiff was riding, and Ocker asked if any of the occupants had been drinking or were injured. The occupants, including Plaintiff, responded in the negative. The officers then asked the occupants to exit the car and return to the house with them. Plaintiff and her friends complied with the officers' request.
Upon gaining entry into the Cottone residence, the officers saw the usual paraphernalia associated with a high school drinking party. Wagner testified that, based on the answers of several people that they had been drinking and his observation of beer bottles and disposable cups, he concluded that people under the age of 21 had been drinking. He then called Sergeant Serone and described the situation. She ordered that he take the attendees to the McLean County Law Enforcement Facility. The officers thereafter transported the attendees to the McLean County facility. There, Plaintiff underwent a breathalyser test which indicated that she had not been drinking alcoholic beverages. She was then released into the custody of one of her parents.
In Count I, Bisbee alleges Defendants Ocker, Wagner, and Serone in their individual capacities violated her rights secured by the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. In Count II, Bisbee alleges that Defendants Brienen (the elected Sheriff of McLean County), Ocker, Wagner, and Serone in their individual and official capacities employed an unconstitutional policy which proximately violated rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Count III alleges that Defendant Charles Reynard (State's Attorney for McLean County) in his individual and official capacities established a policy violative of and proximately causing deprivation of rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.
Both sides have moved for summary judgment. Plaintiff argues that there is no dispute of material fact that she was arrested without probable cause and, therefore, she is entitled to summary judgment on Count I. While not expressly stated in her prayer for relief, after lengthy discussion of Count II, Plaintiff states that, "[she] is entitled to summary judgment against Brienen in his official capacity." (Memo in Supp., at 35.) The Court interprets this as a prayer for summary judgment in Count II. As for Count III, Plaintiff notifies the Court that the parties have stipulated to its dismissal. Count III is ordered dismissed.
Defendants reject the propositions relating to Counts I and II. Moreover, they have moved for summary judgment, arguing that individual Defendants Brienen, Ocker, Wagner, and Serone are entitled to protection under the doctrine of qualified immunity.

Discussion
A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, *501 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir.1988).
If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex Corp., 106 S.Ct. at 2553. This Court must then determine whether there is a need for trialwhether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. Anderson, 106 S.Ct. at 2511.

1. Count I
This Court agrees with Plaintiff that no factual dispute exists which precludes summary judgment in her favor on Count I. This Court must engage in a two-step process to determine if an unconstitutional arrest occurred. First, it must be determined whether an arrest occurred, and, second, whether the officers, absent a warrant, had sufficient probable cause to make such an arrest.
A seizure, for constitutional purposes, has taken place when, "in their view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
There is really no dispute that Plaintiff was seized and an arrest was effectuated. Wagner in his deposition admitted that Plaintiff was not free to leave when she and her friends were asked to go back to the Cottone residence. (Wagner Dep., at 23.) Moreover, the shift commander, Serone, in her deposition, conceded that the attendees who were brought into the police station were under arrest. (Serone Dep., at 8.)
The thornier issue is whether the officers had probable cause to arrest Plaintiff. Defendants cite several factors which they claim entitled them to seize her. Serone testified that the presence of alcoholic beverages in the presence of minors contributed to the officers' determination of probable cause. Wagner testified that the 911 hang-up call motivated him to detain all the attendees, including the Plaintiff, in order to investigate why the call had been placed, (Wagner Dep., at 16, 19.), that he did not see any evidence of drunk driving on the part of people leaving the party, and that if the car driven by Melissa Mercier had made it to the street a few seconds earlier, she most likely would have been able to leave without difficulty. (Wagner Dep., at 30.)
This Court agrees with Plaintiff that these facts create an insufficient basis for a full-scale arrest. It is well settled that the mere fact a person associates with a person whom the police have grounds to arrest does not by itself establish probable cause. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). In Ybarra v. Illinois, although a search warrant issued on probable cause gave police officers authority to search premises of a tavern and to search the bartender, the pat-down search and seizure of tavern patrons was not constitutionally permissible where there was no reasonable belief that they were involved in any criminal activities. 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). The Supreme Court noted:
Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided simply by pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.
*502 Id. at 342 (citations omitted; emphasis added).
In the instant matter, the record is insufficient to support a finding that Defendants had probable cause to suspect that Plaintiff had committed a crime. When asked in his deposition whether he had any reason to believe that the Plaintiff was drinking that night, Ocker replied that he didn't know if she had. (Ocker Dep., at 93.) Wagner also testified in his deposition that the reason for detaining Plaintiff was to investigate the nature of the 911 hang-up call. (Wagner Dep., at 22.) Seeing a person leaving the house from which a recent and nonspecific 911 call had been made certainly would justify a brief detention under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968); however, once the officers entered the residence and determined that there was no emergency and that the only possible criminal conduct was underage drinking, the 911 call could no longer be used as a basis for detaining the Plaintiff.
Count I was brought against Ocker, Wagner, and Serone in their individual capacities. Defendants, in their Motion for Summary Judgment, argue that these Defendants should be shielded under the doctrine of qualified immunity. This argument is based on the oft-argued proposition that where the conduct of a public official does not violate a clearly established statutory or constitutional right of which a reasonable person would have known, the government employee is entitled to protection. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This Court notes that this Circuit has determined that it must be authoritatively decided that the conduct is forbidden in order for Plaintiff to prevail. Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir.1993). Factually analogous cases decided prior to the alleged misconduct are required in order to find that a constitutional right has been clearly established. Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir.1988). Furthermore, district courts cannot establish a constitutional right for the purpose of qualified immunity. Anderson v. Romero, 72 F.3d 518, 525 (7th Cir.1995). Moreover, Plaintiff has the burden of showing the existence of the clearly established constitutional right. Id.
In the specific context of damage action brought under 42 U.S.C. § 1983, the arresting officers are immune from liability "if a reasonable police officer could have believed [the plaintiff's arrest] to be lawful, in light of clearly established law and the information the arresting officers possessed." Jones v. Watson, 106 F.3d 774 (7th Cir.1997), quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).
It is this Court's opinion that Di Re and Ybarra clearly established a specific and individualized determination of probable cause essential for a full warrantless arrest. Therefore, Ocker, Wagner, and Serone are not shielded by qualified immunity.
Accordingly, this Court finds in favor of Plaintiff on Count I on the issue of liability; the issue of damages, though, remains for trial.

2. Count II
In Count II, Plaintiff alleges that Defendants Brienen, Ocker, Wagner, and Serone in their individual and official capacities employed an unconstitutional policy which proximately violated her rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. In short, Plaintiff alleges that the municipality has adopted a de facto policy for dealing with 911 calls which is unconstitutional.
Municipal liability for a § 1983 violation is governed by Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Before a municipality can be liable under § 1983, the plaintiff must show either:
(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy making authority. *503 McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir.1995).
In the present matter, Plaintiff alleges that:
Brienen has specifically adopted a policy whereby 911 "hang up" calls can be used to respond to a situation and therefore allow circumvention of the constraints and restraints imposed by the Fourth and Fourteenth Amendments by engaging in general searches and seizures totally unrelated to the 911 call itself.
Memo in Supp., at 34. Moreover, Plaintiff alleges that she is entitled to summary judgment because Brienen did not answer directly questions relating to the procedures which are to be followed after the receipt of a 911 call. Consequently, Plaintiff argues, this Court should indulge in an adverse inference that there was such a policy.
On inspection of Brienen's deposition, the Court can only conclude that Plaintiff has inaccurately characterized the record. Following is an excerpt from Brienen's deposition:
Attorney Bisbee: But if a 911 call comes to the Normal Police Department, and it turns out that it's within the sheriff's jurisdiction, and it's then routed to your office, is there any operative policy that you have directed your deputies to follow upon receipt of a 911 call?
Attorney Welch: As of now or as of then?
Attorney Bisbee: As of February 14?
Brienen: Thank you. Respond to it as needed. There is now not and was not any direct policy other than you will consider a 911 call as an emergency call and you will respond.
Brienen Dep., at 15.
Plaintiff also alleges that pages 42 to 45 of Brienen's testimony shows that he had promulgated an unconstitutional policy. The only statement made by Brienen relating to the 911 call on these pages occurred in the following dialogue:
Attorney Bisbee: Okay. Let's take this one step further. Let's assume that after the girls got out of the car pursuant to the officers' directions, they were not free to go, they walked back to the house with the officers behind them. The girls went into the house. The resident of the house came to the door and told the officers there was no problem. Do the officers have the authority to go into the house at that point?
Attorney Welch: Okay, object. Number 1, it's not relevant or material. It's not an accurate statement of what the officers saw at the time they went into the house. It's not an accurate statement of what happened and absolutely no probative value on any issue in this case.
Attorney Bisbee: Please answer the question because it's right on the money.
Attorney Welch: Answer the question because 
Brienen: I know, I know. Okay. The officers were responding to what is called a hang-up 911 call. A large group of people at the scene. In order to ensure that there was the safety of whoever it was at the time, had they been prevented, physically shut the door in their faces, they probably would have had a little more trouble justifying entry, but that's not what happened.
The Court is unable to discern from the excerpts on which Plaintiff relies any evidence of a policy promulgated by a person with final policy making authority. Simply, from the alleged non-responsiveness of Brienen and the above-noted passage Plaintiff has not met her burden of showing that such a policy exists.
As the Supreme Court has articulated, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy which policy can be attributed to a municipal policy maker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). No such proof occurred here.
Defendants correctly point out that Ocker, Serone, and Wagner all testified that they knew of no policy in connection with responding to 911 calls. This being so, summary *504 judgment for the Defendants on Count II is appropriate.[1]
Moreover, even if the record did establish that a policy instructed responding officers to secure the premises and persons therein after an anonymous or inaudible 911 call, the Court fails to see how this would be unconstitutional. Simply, if the law prevented officers from detaining persons who were found at the residence from where the 911 call originated, they could be entirely frustrated from performing their law enforcement duty. Any number of emergencies could have been occurring at the Cottone residence that night that led to a hang-up 911 call: a rape, a drug overdose, a suicide, a fist-fight, an unintended shooting, or a drunken misstep down a flight of stairs are just a few. It is therefore entirely reasonable for officers to assume that persons leaving the area where a 911 call originated may be somehow involved with the event that prompted the call. Accordingly, even if Plaintiff had established that Defendant Brienen had promulgated a policy requiring the temporary seizure of persons who are found in the area from which a non specific 911 call was made, this policy would not violate the Constitution.

3. Count III
Count III is a claim against Charles Reynard in his individual and/or official capacities for establishing a policy violative of and proximately causing deprivation of rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments pursuant to § 1983. In Plaintiff's Memorandum in Support, she states that, "Plaintiff and Defendants however, have agreed and stipulated pursuant to Rule 41(a)(1)ii that the court may enter an order dismissing the above captioned matter as to Reynard." (Memo in Supp., at 2 n. 1.) Accordingly, this Court dismisses Count III.

4. Related Motions
Plaintiff has also filed a "Motion to Strike or Not Consider Portions of Defendants' Response to Plaintiff's Motion for Summary Judgment" and "Motion to Require Response to or Treat as Confessed Plaintiff's Motion to Strike Portions of Defendants' Memorandum in Opposition to Plaintiff's Motion to Summary Judgment."
Plaintiff correctly points out that Defendants failed to file a statement contesting any of Plaintiff's "Statements of Uncontested Facts" or submit a separate statement of their own uncontested facts, as required by Local Rule 7.1(D)(2). Moreover, Plaintiff points out that Defendants failed to respond to her Motion for Summary Judgment by the established deadline. However, Defendants contested certain factual statements in their Memorandum which was eventually filed.
This Court agrees with Plaintiff that by failing to file a separate statement of facts and by filing late pleadings, Defendants' counsel has increased the burden on this Court and Plaintiff's counsel. However, the Court fears that mechanically striking portions of Defendants' pleading would hamper the interest of justice and possibly injure the non-culpable parties. Accordingly, these motions are denied. Defendants' counsel is hereby warned that future transgressions will be sanctioned.

Conclusion
Defendants' Motion for Summary Judgment [# 26] is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion for Summary Judgment [# 41] is GRANTED IN PART and DENIED IN PART. In sum, this Court: (1) GRANTS Plaintiff summary judgment on the issue of liability on Count I; (2) GRANTS Defendants summary judgment on Count II; and (3) DISMISSES Count III as per the parties' stipulation.
Plaintiff's Motion to Require Defendants to Respond [# 47] is MOOT. Plaintiff's Motion to Strike [# 50] is DENIED. Plaintiff's Motion *505 to Require Response to or Treat as Confessed [# 51] is DENIED.
The only issue which remains for trial is damages owing Plaintiff on Count I.
NOTES
[1] While Defendants' first-filed Motion for Summary Judgment relied mainly on arguments concerning various forms of immunity, in their response to Plaintiff's Motion for Summary Judgment, they brought up this lack of evidence argument. As Plaintiff had an opportunity to reply, the Court is satisfied that these grounds are appropriate for a determination of summary judgment in Defendants' favor on Count II.