256 F.Supp.2d 843 (2003)
Debra KEACH and Patricia Sage, Plaintiff,
v.
U.S. TRUST COMPANY, N.A., f/k/a/ U.S. Trust Company of California, N.A., Ellen D. Foster, as Executrix of the Estate of Thomas S. Foster and as Co-Trustee of the Thomas S. Foster Trust executed on April 14, 1994, The Northern Trust Company, an Illinois Corporation, as Co-Trustee of the Thomas S. Foster Trust executed on April 14, 1994, Melvin R. Regal,individually, as trustee or agent of the Steven Jay Regal Trust, as trustee or agent of the Judi Lynn Regal Trust, and as trustee or agent of the John E. Regal Trust, A. Robert Pellegrino, Valuemetrics, Inc., Houlihan, Lokey, Howard & Zukin, Inc., Robert A. Ostertag, Jr., Terry P. Cole, Alan R. Dix, Jon D. Elletson, Stephen P. Bartley, Lyle T. Dickes, James N. Freid, Dale Fujimoto, William J. Gehring, Henry R. Gregory II, John F. Halpin, Richard S. Hodgson, James H. Kyle, John Lappegaard, Gregory K. McAllister, George McKittrick, Michael F. Norbutas, Clayton Patino, Jerry L. Rathmann, Frederick J. Stuber, W. Thomas Stumb, Mark Swedlund, Leo A. Vandervlugt, Robert J. Wilson, Bruce B. Wright, and Ashley Anne Foster, as Trustee or Agent of the Ashley Anne Foster Irrevocable Trust, Defendant.
No. 01-1168.
United States District Court, CD. Illinois, Peoria Division.
March 10, 2003.
*844 Dean B. Rhoads, Robert Rhode, Edward Sutkowski, Steven Oates, Sean Anderson, Sutkowski & Rhoads, Peoria, IL, for Plaintiffs Debra Keach and Patricia Sage.
Timothy Bertschy, Heyl, Royster, Voelker & Allen, Peoria, IL, Robert Eccles, Shannon M. Barrett, O'Melveny & Myers LLP, Washington, DC, for Defendant U.S. Trust Company, NA, fka U.S. Trust Company of California.
Charles Roth, James Springer, Joseph Z. Sudow, Kavanagh Scully Sudow White & Frederick, Peoria, IL, Michael T. Graham, Nancy Ross, McDermott Will & Emery, Trent P. Cornell, Duane Morris LLC, Chicago, IL, for Defendant Ellen D. Foster, Executrix of the Estate of Thomas S. Foster and as Co-Trustee of the Thomas S. Foster Trust executed on 4/14/94.
Michael T. Graham, Nancy Ross, McDermott Will & Emery, Chicago, IL, for Defendant The Northern Trust Company, an Illinois Corporation as Co-Trustee of the Thomas S. Foster Trust executed on 4/14/94.
Richard J. Pautler, Jennifer Baetje, Thompson & Coburn, St. Louis, MO, for Defendants Robert A. Ostertag, Jr., Terry *845 P. Cole, Alan R. Dix, Jon Elletson, and A. Robert Pellegrino.
James Bailey, Paul Ondrasik, Jr., Steptoe & Johnson, Washington, DC, Roy Davis, David Lubben, Davis & Campbell LLC, Peoria, IL, for Defendants Valuemetrics, Inc.
Mark Casciari, Ian Hugh Morrison, Sari M. Alamuddin, Seyfarth Shaw, Chicago, IL, for Defendant Houlihan, Lokey, Howard & Zukin, Inc.
Charles Roth, James Springer, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendant Stephen P. Bartley.
Stephen Gay, Jeffrey Alan Ryva, Husch & Eppenberger LLC, Peoria, IL, for Defendant Lyle Dickes.
Jeffrey Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Defendant James Freid.
Charles Roth, James Springer, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendant Dale Fujimoto.
John Elias, Robert Riffle, Cynthia Elias, Elias Meginnes Riffle & Seghetti, Peoria, IL, for Defendant William Gehring, Henry Gregory, II, John F. Halpin, James Kyle, John Lappegaard, George McKittrick, Clayton Patino, Jerry Rathmann, W. Thomas Stumb, Mark Swedlund, Leo Vanderlugt, Robert Wilson and Bruce Wright.
Jeffrey Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Defendant Richard Hodgson.
Dean Essig, Washington, IL, for Defendant Gregory McAllister.
Charles Roth, James Springer, Joseph Sudow, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendants Michael Norbutas, Frederick Stuber, and for Defendant Ashley Anne Foster, as trustee or agent of the Ashley Anne Foster Irrevocable Trust, and Melvyn R. Regal, individually, as trustee or agent of the Steven Jay Regal Trust, as trustee or agent of the Judi Lynn Regal Trust, and as trustee or agent of the John E. Regal Trust.

ORDER
MIHM, District Judge.
Now before the Court is a Motion for Summary Judgment by Defendants Robert Ostertag ("Ostertag") and A. Robert Pellegrino ("Pellegrino"). For the reasons set forth below, the Motion for Summary Judgment [# 412] is GRANTED IN PART and DENIED IN PART.

FACTUAL BACKGROUND
The basic factual background has been sufficiently set forth in the prior orders of this Court, and familiarity therewith is presumed. The present motion is brought by Defendants Ostertag and Pellegrino with respect to the claim against them for restitution as parties-in-interest in Count IX of the First Amended Complaint. At the time of the 1995 transaction, Ostertag was the President and CEO of MBC. Pellegrino was the President of F & G, a member of the F & G and MBC Boards, and a member of F & G's Executive Committee. The matter is now fully briefed and ready for resolution. This Order follows.

DISCUSSION
Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322, *846 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir.1988).
If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., All U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir.1995).
Ostertag and Pellegrino bring this motion in their capacity as parties in interest pursuant to § 406(a) of ERISA, which prohibits a "sale or exchange ... of any property between the plan and a party in interest," and also prohibits a "transfer to ... a party in interest ... of any assets of the plan." 29 U.S.C. § 1106(a)(1)(A) and (D). ERISA further defines a "party in interest" to include any fiduciary, person providing services to the plan, an employer, an employee/officer/director or 10% shareholder of an employer, or any relative of these individuals. 29 U.S.C. § 1002(14). There is no dispute that Ostertag and Pellegrino qualify as parties in interest.
As the Court has previously held and hereby incorporates by reference, once Plaintiffs establish that the purchases of stock by the ESOP constituted a prohibited transaction under § 406, § 502(a)(3) then provides a right of action to seek appropriate equitable relief from parties in interest to redress the violation. Harris Trust, 120 S.Ct. at 2188, citing § 502(l)(1)(B). Borrowing from the law of trusts, the Defendants can then invoke the substantive equivalent of a modified bona fide purchaser defense by establishing that they gave value for the trust property. If the Defendants are able to make such a showing, a presumption of good faith attaches, and the burden shifts back to the Plaintiffs to establish that Defendants acted in bad faith or had actual or constructive notice of the circumstances that rendered the transaction unlawful.
Plaintiffs have conceded that at least for purposes of these motions, they do not contest that the stock purchase transactions were for "value" in the sense that they were not gratuitous but rather involved consideration that was more than nominal. Accordingly, Ostertag and Pellegrino are entitled to a presumption of good faith and lack of knowledge unless Plaintiffs are able to rebut that presumption.
Plaintiffs attempt to demonstrate knowledge by stating that Pellegrino was involved in the due diligence process when F & G bought MBC in 1992 and received copies of checklists indicating the types of information that F & G wanted to obtain. He also received an August 4, 1992, inter-office memorandum from Lyle Dickes containing reports generated by some of the due diligence teams. Although Plaintiffs claim that this memorandum contained *847 materials indicating that increased state regulation of sweepstakes was a concern of MBC, the Court has found one line in a 70-page document listing "[i]ncreased state regulation of sweepstakesfirst round winner" as one of 12 concerns of the business. The suggestion that this was sufficient to place Pellegrino on notice of circumstances rendering the transaction unlawful is without merit. However, he also recalls that during this due diligence process, he was privy to discussions regarding the fact that MBC used sweepstakes marketing and that some states did not like sweepstakes and were increasing state regulation.
Plaintiffs then insinuate that the difference in the due diligence inquiries performed in 1995 from the investigation that was performed with the acquisition of MBC in 1992 should have put Ostertag and Pellegrino on notice of impropriety. Even assuming that they had some basis to know that the due diligence inquiry that was performed by U.S. Trust and its advisors was less than had been performed with respect to MBC in 1992, Plaintiffs' bald assertion that the scope of the due diligence inquiry for the stock purchase transaction should necessarily have been of the same magnitude as the due diligence inquiry done by the company in preparation for the potential acquisition of a new corporation to be integrated into the F & G family is both nonprobative and logically unsound.
Pellegrino received correspondence from Michael Norbutas, F & G's Treasurer, in June and July 1995 discussing the way that the Company and its shareholders would make money through the ESOP transaction and a December 1995 tax opinion from Price Waterhouse. Both Pellegrino and Ostertag attended a Summer Leadership Meeting at the Peoria Country Club in 1995, the purpose of which was to discuss the proposed ESOP transaction. However, Plaintiffs have introduced no evidence indicating that this meeting was anything more than a general overview of the transaction plus the opportunity for shareholder participants to ask preliminary questions. Plaintiffs also point to a copy of a memorandum from Dickes dated August 25, 1995. The memorandum refers to an overview of the proposed ESOP transaction that was apparently given during the Summer Leadership Meeting and informs the recipients of the arrangements that were being made with institutional lenders, as well as the due diligence inquiry that would be performed by both the potential lenders and the valuation firms.
On November 14, 1995, there was another meeting at the Country Club where certain officers were updated as to the details of the proposed stock purchase transaction. The testimony of others who attended that meeting indicates that what was discussed was nothing more than a general overview of the transaction plus the opportunity for shareholder participants to obtain information regarding their personal participation in the transaction. Prior to attending this meeting, both Ostertag and Pellegrino each received a copy of a Confidential Disclosure Memorandum dated November 10, 1995, which contained the general structure of the proposed ESOP transaction, as well as information specific to their individual participation. This document indicated that book value restrictions were being removed and vesting of shares was being accelerated for the transaction.
Plaintiffs then point to the representations made by all of the selling shareholders in the Agreements to Purchase Stock. Specifically, they cite paragraph 3.B. of the Recitals section, which acknowledges that each seller has received a copy of and is familiar with the Disclosure Memorandum with its exhibits and enclosures, including the Private Placement Memorandum from *848 BA Securities, Inc., F & G's audited financial statements, and Valuemetrics' Transaction Memorandum. Both men also received a confidential memorandum from Regal dated November 29, 1995. In this memorandum, Regal notes a decline in the market value of most publicly traded direct marketing companies and then goes on to state that this fact "greatly influenced the decision process of the ESOP Trustee, U.S. Trust Company, it's financial advisor, Houlihan Lokey Howard & Zukin and ourselves in reaching an agreement on a price for the stock that we would sell to the ESOP."
On December 7, 1995, Valuemetrics issued a Confidential Transaction Memorandum that was distributed to each of these Defendants, providing them with a detailed explanation of the mechanics of the stock purchase transaction. Plaintiffs assert that Pellegrino was similarly informed as to the pertinent details of the 1997 stock purchase transaction.
As the Court has stated in previous Orders, the information discussed in the preceding paragraphs, even when considered cumulatively with all inferences reasonably drawn therefrom, does not establish constructive knowledge of a breach of trust. However, Plaintiffs have introduced additional evidence that, when construed in the light most favorable to Plaintiffs, calls into question both the state of Ostertag and Pellegrino's knowledge and the reasonableness of their reliance on the professionals who structured/approved the transactions.
Ostertag and Pellegrino held significant positions of authority at MBC and F & G respectively, which afforded them both access to much of the purportedly critical information that has been identified by Plaintiffs as a basis for suggesting that the 1995 stock purchase transaction was not for adequate consideration or was undertaken with at least constructive knowledge of impropriety. As the President and CEO of MBC, Ostertag was in a position to be aware of the customer complaints, inquiries from attorneys general, and increasing regulation of sweepstakes marketing at the state level; he was also a named fiduciary to the F & G ESOP as a member of the ESOP's Administrative Committee beginning in May-June 1996. In fact, Thomas Stumb, MBC's Chief Financial Officer, was responsible for handling inquiries regarding sweepstakes from state attorneys general and reported this type of information to Ostertag. Ostertag has also testified that prior to the 1995 transaction, he was aware of inquiries into MBC's sweepstakes marketing and could not recall any other time when MBC had received inquiries from three state attorneys general in less than one month.
Pellegrino, as the President of F & G, member of the Boards of both F & G and MBC, and a member of F & G's Executive Committee, had or should have had similar access to this type of information; in fact, Ostertag reported to Pellegrino, who then reported directly to Thomas Foster. Pellegrino testified in his deposition that he discussed consumer complaints, attorney general inquiries, and state regulatory legislation with Ostertag during the three or four conversations that he had with him each week. Pellegrino also received a July 14, 1995, confidential memorandum from Attorney Sudow proposing that Pellegrino, Dickes, Stuber, and Norbutas "be out in front as the committee that carries out the instruction from the Board (so that there is no apparent conflict of interest on the part of Tom [Foster] and Mel [Regal])."
Ostertag and Pellegrino have presented facts indicating that they were aware that the transaction was being approved by competent professional advisors and relied on their determinations. However, given their positions within the company and *849 other evidence of record, the Court must conclude that Plaintiffs have introduced evidence which, when construed in the light most favorable to Plaintiffs as the non-moving party, could support the reasonable conclusion that Ostertag and Pellegrino had constructive knowledge of circumstances that rendered their reliance on those determinations unreasonable and should have placed them on notice that the transaction could be unlawful. As the issue of Ostertag and Pellegrino's knowledge involves questions of credibility that cannot be resolved prior to trial, Plaintiffs have met their burden of presenting a genuine issue of material fact on the question of their constructive knowledge of impropriety sufficient to survive summary judgment.[1]
That being said, it is undisputed that the 1997 stock purchase was funded by a gift of funds to the ESOP for the specific purpose of purchasing the additional shares of F & G stock and that the gift would not have been made for any other purpose. Thus, the 1997 transaction was a no lose proposition for the ESOP, as it allowed the ESOP to increase its majority ownership without incurring any additional debt. As Pellegrino had a put right entitling him to sell his shares to F & G for the same price that he received via the purchase by the ESOP, he received precisely what he would have received if he had sold his shares to F & G as originally contemplated, and there is by definition no unjust enrichment. Plaintiffs make no effort to respond to this argument or to refute the factual assertions upon which it is premised. As the constructive trust remedy sought by Plaintiffs is dependent upon proof of unjust enrichment, the Court finds that Plaintiffs are not entitled to the equitable relief sought with respect to the 1997 transaction as a matter of law, and Pellegrino is entitled to summary judgment on this aspect of Count IX.

CONCLUSION
For the reasons set forth above, the Motion for Summary Judgment by Defendants Ostertag and Pellegrino [# 412] is GRANTED IN PART and DENIED IN PART.
NOTES
[1] Plaintiffs again assert the same imputed knowledge theory based on Ostertag and Pellegrino's appointment of Stuber to act as their representative for purposes of attending the closing on the 1995 transaction that they have previously asserted with respect to the other Defendant in this action. For the same reason as have been in the prior Orders of the Court, this theory is likewise rejected with respect to the attempt to impute Knowledge to Ostertag and Pellegrino.