**PEORIA AREA LANDLORD ASSOCIATION, et al., Plaintiffs,**

v.

**The CITY OF PEORIA, ILLINOIS, et al., Defendants.**

**No. 98–1304.**

United States District Court, C.D. Illinois, Peoria Division.

Sept. 18, 2001.

George Adamski, Karen Conti, Adamski & Conti, Chicago, IL, Attorneys for Plaintiffs.

Clifton J. Mitchell, Elizabeth L. Jensen, Randall Ray, City of Peoria, Peoria, IL, Attorneys For Defendant City of Peoria.

Brian D. Mooty, James W. Springer, Julian E. Cannell, Kavanagh Scully Sudow

White & Frederick PC, Peoria, IL, Attorneys for Defendant Peoria Housing Authority.

## ORDER

MIHM, District Judge.

This matter is now before the Court on Motions for Summary Judgment by the City of Peoria (the "City") and the Peoria Housing Authority ("PHA"). For the reasons set forth below, the City's Motion for Summary Judgment [# 128] is GRANTED, and the PHA's Motion for Summary Judgment [# 123] is also GRANTED.

## FACTUAL BACKGROUND

On March 21, 1995, the City adopted Ordinance No. 13,908 (the "Registration Ordinance"), which requires all owners of non-owner occupied properties to register such properties with the City. The Registration Ordinance was subsequently amended on July 11, 1995, and April 30, 1996.

On March 28, 1995, the City adopted Ordinance No. 13,913 (the "Inspection Ordinance"), which requires all non-owner occupied properties constructed prior to 1961 to be inspected by the City, including an exterior inspection and an interior inspection limited to 15 health and life-threatening violations (e.g., smoke detectors, exits, chimneys, railings, steps, water heaters, furnaces, electrical, bathroom and kitchen plumbing, etc.). The Inspection Ordinance was subsequently amended on July 11, 1995, September 2, 1997, April 14, 1998, and August 25, 1998.

Once an owner registers his or her property pursuant to the Registration Ordinance, the registration constitutes a temporary certificate of inspection until the initial rental inspection is performed. After this inspection, a certificate of inspection is issued to the owner of premises that are in compliance. If the property is found to have one or more health or life-threatening violations, exterior housing violations, or environmental violations, the City provides notice to the owner and sets a date for re-inspection, at which time the violations are required to be corrected. The notice for such an inspection must advise the owner and dwelling occupant of the inspection, his/her right to refuse an inspection, and the City's right to seek issuance of an administrative search warrant in the event of any such refusal. The City also maintains a Denial List that identifies any owner of non-owner occupied rental property built before 1961 who has notified the City in writing that he or she does not consent to the warrantless search of his or her rental property and that he or she wishes to have the inspectors obtain an administrative search warrant for such an inspection pursuant to the provisions of the Inspection Ordinance.

The Ordinances were adopted after public hearings at which there was testimony that residential rental properties were disproportionately represented in properties that were the subject of housing complaints, code violations, search warrants, and crime in the City. In August 1994, when the City Council first considered these ordinances, 41% of the City's dwelling units were rental rather than owner occupied. At that time, 68% of the complaints received by the City's Code Enforcement Division involved rental housing. That year, 62% of the housing complaints received by the City involved rental properties, 66% of the cases brought before the City's Housing Commission involved rental properties, 70% of the housing cases filed in the Tenth Judicial Circuit Court involved rental properties, 62% of the cases reviewed for demolition involved rental properties, and 66% of the residential fires on the City's south side involved rental or vacant properties. Accordingly, one of the purposes of enacting the ordinances was to upgrade and

maintain the condition of residential rental units.

Pursuant to the United States Department of Housing and Urban Development ("HUD") regulations, the PHA operates a Section 8 program that offers rent subsidies to low income persons who rent from private landlords. The number of subsidy vouchers or certificates offered to tenants by PHA under the Section 8 program is limited to the number fixed by HUD, which in turn is limited to the number appropriated by Congress. During the time period relevant to this litigation, the PHA has applied for, been awarded, and accepted additional vouchers/certificates and has also regularly accepted new individuals into its Section 8 program. With the exception of rental properties owned by individuals who are on the City's Denial List, a Section 8 voucher/certificate can be used in any part of the City. Section 8 properties are regularly inspected for health and safety violations, as required by HUD; however, the PHA does not regulate or impose any requirements upon a landlord's ability to rent to non-Section 8 subsidized tenants.

Plaintiffs are an association of landlords and members [1] thereof who own or owned rental property in the City. Each of the individual Plaintiffs has received rent from these properties during the period when the Registration and Inspection Ordinances have been in effect. From 1997 through 2000, no cases for demolition were filed against Plaintiffs, who have registered 209 rental properties pursuant to the Registration Ordinance. Of these, 95 certificates of inspection and 44 temporary certificates of inspection have issued. No properties have been designated as unfit for human inhabitation and ordered to be vacated as a result of a rental inspection. From 1996 through 2000, less than 10% of all rental inspections conducted were conducted on properties owned by the Plaintiffs.

On September 9, 1998, Plaintiffs brought this action under 42 U.S.C. § 1983 and the Fair Housing Act ("FHA") alleging that Articles 13 and 14 of Chapter 5 of the City Code (which contain the Registration and Inspection Ordinances), as well as corresponding regulations promulgated by the Peoria Housing Authority, are unconstitutional on their face and as applied. Plaintiffs further alleged that although neither Ordinance on its face makes any distinction on the basis of race or any other consideration forbidden by the FHA, the PHA conditions the rental of any property to a Section 8 tenant upon the issuance of a certificate of occupancy certifying that the property qualifies for Section 8 rent subsidies.[2] Specifically, the May 1996 Section 8 Administrative Plan provides that the PHA will not approve a rental property for Section 8 subsidy if "[t]he Owner or its Agent fails to cooperate with the PHA, and the City of Peoria's administration and code or law enforcement agencies concerning PHA, and the City policies, rules, ordinances, regulations or laws concerning any of the Owner or Agent's properties involved in the PHA program." PHA SECTION 8 ADMINISTRATIVE PLAN at Article IV, Section N(b)(3)(i). In the event that a certificate of occupancy is denied by the City, Plaintiffs contend that tenants, and

---

1. The members of the association remaining as individual Plaintiffs in this case are Ken Meyer, Diane Shipton, Bill Shipton, Richard Wicks, Lew Nauman, Phyllis Moore, Tom Moore, Linda Jones, Merle Huff, Dave Fehr, and Cary Ballard. All other members of the association have been dismissed.

2. The City does not contest this fact, which is asserted in Plaintiffs' Statement of Additional Uncontested Facts. Although the PHA makes a general denial, a general denial unsupported by any indication of the basis for the denial or any citation to evidence in support of such denial is insufficient.

therefore landlords, are unable to receive rental subsidies provided for under Section 8 for that property and that 80% of persons entitled to such funds are racial minorities. Plaintiffs further contend that if a landlord is on the City's Denial List for any single piece of rental property that he or she owns, his or her presence on the list will effectively preclude Section 8 approval for rental of any other non-owner occupied properties that he or she owns.

Following the Court's rulings on Motions to Dismiss, only the regulatory takings claim asserted in Count IV and the FHA claims remained. However, in the course of responding to the pending Motions for Summary Judgment, Plaintiffs have conceded that they have not exhausted available State remedies with respect to their regulatory takings claim and have withdrawn the claim previously asserted in Count IV, leaving only the FHA claims pending.

## LEGAL STANDARD

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.,* 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson,* 106 S.Ct. at 2511.

## DISCUSSION

The FHA makes it unlawful "to discriminate against any person in the terms, condition, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status or national origin." 42 U.S.C. § 3604(b). An FHA claim can be proven by either a demonstration of intentional discrimination or a showing of disparate impact. Here, Plaintiffs contend that the denial of Section 8 benefits to persons who wish to live in rental housing where the owner of such housing has refused to consent to warrantless searches under the Inspection Ordinance results in a disparate impact that violates the FHA because the majority of individuals who obtain Section 8 vouchers are minorities. In order to analyze a claim based on conduct that allegedly produces a discriminatory impact in violation of the FHA, the Court looks to four factors: (1) how strong is the plaintiff's showing of discriminatory intent; (2) is there some evidence of discriminatory intent; (3) what is the defendant's interest

in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing. *Phillips v. Hunter Trails Community Assoc.*, 685 F.2d 184, 189–90 (7th Cir.1982), *citing Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir.1977). It is conceded for purposes of this motion that there is no evidence of discriminatory intent by either the City or the PHA.

### I. *The City's Motion for Summary Judgment*

The City argues that it is entitled to summary judgment because: (1) the wrong complained of by Plaintiffs, the denial of Section 8 benefits, is not a direct consequence of the City's Ordinances, but rather the result of an independent intervening act of the PHA; and (2) Plaintiffs cannot show any disparate impact on a minority group in being able to obtain housing.

■ With respect to its first argument, the City asserts that even assuming that Plaintiffs can show a disparate impact on minority tenants, a landlord's refusal to voluntarily submit to an inspection after having registered the property is not the cause of the injury complained of by the Plaintiffs. Under the Inspection Ordinance, a landlord who has registered his or her property in compliance with the Registration Ordinance has a temporary certificate of inspection which allows the property to be rented until the initial inspection is performed. Section 5–532 of the Inspection Ordinance also requires that the written notice of inspection sent to a landlord must contain certain information, including his or her right to refuse inspection of the unit and the City's right to seek issuance of an administrative search warrant in the event of such refusal. Thus, under the Ordinances in question, it is within the right of the landlord to refuse to voluntarily consent to the inspection, yet he or she is still in compliance with the Inspection Ordinance and can continue to rent the property during the time it takes for the City to obtain an administrative search warrant and conduct the inspection.

■ Plaintiffs respond that the Ordinances and PHA's policy of denying Section 8 funds for rental of properties owned by landlords on the Denial List have a disparate impact on the ability of individuals entitled to benefit from Section 8 funds resulting from the denial of Certificates of Occupancy to Plaintiffs and the restriction on the availability of Section 8 subsidies for such rentals. Rather than following the established practice of offering statistical evidence in support of this claim,[3] they submit the affidavits of three Peoria landlords indicating their opinions that the Ordinances and PHA's policy have a much greater impact on racial minorities because, in their opinions, 80% of all persons in the single-family rental properties affected by the challenged Ordinances and policy are minorities. While these individuals could possibly be competent to give testimony regarding the racial composition of the tenants of the rental properties they own, the Court finds that they are simply not qualified to provide generalized statistical evidence regarding the composition of all rental properties in the City and any alleged disparate impact on all minority tenants in the City.

During a previous scheduling conference involving counsel for all parties in this

---

**3.** *See Phillips*, 685 F.2d at 189–90 (phrasing the first element of the *Metropolitan Housing* factors as "the strength of the plaintiff's statistical showing.")

matter, the Court discussed this issue with Plaintiffs' former counsel. The necessity of valid statistical/demographic information was recognized, as were several possible resources for obtaining such information. Plaintiffs have now apparently sought to avoid the expense that might have been incurred in obtaining this demographic information by relying on the opinions of Meyer, Jones, and Ballard, none of whom are sufficiently qualified to bear the weight of the generalized, statistical/demographic opinions offered, and an unexplained, unsubstantiated copy of a map of 1990 census tracks. There is likewise no non-speculative evidence demonstrating the number of individuals who have been denied housing or inconvenienced in their search for subsidized housing as a result of the challenged policy or that minorities eligible for Section 8 assistance were impacted any differently from whites entitled to Section 8 assistance. Nor is there any credible evidence indicating that the effect of the PHA policy is to concentrate Section 8 renters in a certain part of town or to perpetuate racial segregation. Accordingly, paragraph 13 of the Ballard Affidavit, paragraph 11 of the Jones Affidavit, and paragraphs 20 and 21 of the Meyer Affidavit are stricken.

Moreover, despite Plaintiffs' best efforts to implicate the City's Ordinances as the source of the alleged harm in this case, it is clear that the burden that results from any purported disparate impact is the restriction on the availability of rental housing to minorities. However, the City's Ordinances have been found to be rationally-based, as well as constitutional, and, either on their face or as applied *by the City,* do not prescribe any attendant consequences for a landlord who appears on its Denial List by virtue of his or her refusal to voluntarily submit to a warrantless inspection. The registration of the property continues to serve as a temporary certificate of inspection. The City simply obtains an administrative warrant to conduct the inspection, and the landlord remains in compliance with the Ordinances and can continue to rent his or her property in the interim. The Ordinances do not regulate the conduct of the tenants, and there is no impact on a minority tenant's ability to rent these properties in the interim that results from the Ordinances themselves or their enforcement *by the City.*

Rather, it is the PHA's policy of denying Section 8 subsidies for the rental of properties owned by landlords on the City's Denial List that allegedly causes the disparate impact on minority tenants and, therefore, on the landlords wanting to rent their properties to these tenants. Although Plaintiffs point out that the members of the PHA are appointed by the City's Mayor and that the PHA inquires whether landlords submitting applications for Section 8 subsidies are on the Denial List, they have produced no evidence indicating that the City controls the PHA or has any involvement in establishing, implementing, or administering the challenged PHA policy. To the contrary, they have admitted that the PHA is a separate legal entity that is not part of the City. The fact that the PHA has independently decided to ascribe consequences to the City's Denial List is insufficient to show discriminatory effect attributable to the City or the Ordinances in question.

Even assuming that Plaintiffs had introduced evidence sufficient to establish a disparate impact on minority tenants, this failure to raise a genuine issue of material fact concerning discriminatory effect by an action *of the City,* in conjunction with the lack of evidence indicating discriminatory intent and the important governmental interest in promoting public safety by protecting rental tenants from injuries resulting from housing code violations, is fatal to their claim against the City. As no reason-

able jury could find in favor of Plaintiffs on the record before the Court, the City is entitled to summary judgment.

## II. *PHA's Motion for Summary Judgment*

The PHA asserts that it is entitled to summary judgment because: (1) Plaintiffs lack standing; and (2) Plaintiffs have not established any facts indicating either intentional discrimination or disparate impact under § 3604. Each motion will be addressed in turn.

■ Several courts have recognized that an organization can have standing if it can show that it has suffered "deflection of the agency's time and money from counseling to legal efforts directed against discrimination." *Simovits v. Chanticleer Condominium Assoc.*, 933 F.Supp. 1394, 1400 (N.D.Ill.1996), *citing Chicago v. Matchmaker Real Estate Sales Center*, 982 F.2d 1086, 1095 (7th Cir.1992). Plaintiffs argue that they have standing to pursue their FHA claims because their involvement in this action demonstrates their commitment to fair housing compliance. However, unlike the cases identified, Plaintiffs are not a fair housing agency and have made no showing that their primary purpose is counseling against discrimination, or that they are in the practice of expending time and money for such counseling. Moreover, much of this litigation has represented little more than their veiled efforts to continue to challenge the Rental and Inspection Ordinances and the impact of these Ordinances on them as landlords.

■ The PHA further argues that Plaintiffs can only maintain suit for their own injuries and cannot maintain a claim based on purported injuries to third parties who were prospective renters for properties owned by the Plaintiffs. In support of this assertion, the PHA cites *Roth v. City of Syracuse*, 96 F.Supp.2d 171, 183 (N.D.N.Y.2000), *aff'd*, 2001 WL 178033 (2nd Cir. Feb. 20, 2001). In *Roth*, the plaintiff alleged that by refusing to include his apartments on lists of available subsidized housing units available for rental by prospective tenants and then by suspending him from participation in the Section 8 program, the local housing authority had prevented minorities from exercising their rights to rent apartments in areas of low poverty and minority concentration. *Id.* The court questioned the plaintiff's standing to raise such a claim.

> To the extent that plaintiffs rely on the legal rights of minority tenants who might have rented apartments from them had they not been suspended from the housing program, it is doubtful whether plaintiffs have standing under the Fair Housing Act to make this claim. A plaintiff may only assert the constitutional rights of others when a defendant's action adversely affects an existing relationship between plaintiff and the third party.

*Id., citing Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). This Court agrees and has expressed the same concerns since the inception of this case but nevertheless allowed Plaintiffs the benefit of proceeding to determination based on a more fully developed factual record. However, the facts of record, when considered in the context of the law and administrative regulations as discussed in *Roth*, are insufficient to carry the day for Plaintiffs.

■ Even assuming that Plaintiffs have standing to bring their claims, they have admitted for purposes of this motion that they lack evidence of intentional discrimination, leaving the question of whether Plaintiffs have made an adequate showing of a disparate impact on minorities as a result of the challenged policy. As Plaintiffs submitted the same response in opposition to both the motion by the City and

the PHA's motion, the same ruling must necessarily follow. By virtue of their reliance on the stricken statements in the Affidavits of Ballard, Meyer, and Jones to make their showing, the Court finds as a matter of law that Plaintiffs have failed to bring forth any admissible evidence demonstrating a disparate impact on minorities that would qualify for relief under the FHA. The PHA is therefore entitled to summary judgment in its favor.[4]

## CONCLUSION

For the reasons set forth above, the City's Motion to Strike [# 162] is GRANTED IN PART and MOOT IN PART. The PHA's Motion to Strike [# 160] is GRANTED IN PART and MOOT IN PART. Plaintiffs voluntarily WITHDRAW the regulatory takings claim asserted in Count IV. The City's Motion for Summary Judgment [# 128] on the remaining FHA claims is GRANTED, and the PHA's Motion for Summary Judgment [# 123] on the remaining FHA claims is GRANTED. This case is now TERMINATED.

ENTERED this 18th day of September, 2001.

---

4. Even assuming that Plaintiffs had demonstrated admissible evidence of a disparate impact on minorities seeking Section 8 subsidies that resulted in their inability to rent to Section 8 tenants, they have not demonstrated that they have any entitlement or right of access to such subsidies. As the PHA noted in its reply brief, housing authorities have considerable discretion to determine which landlords can participate in the program, and nothing in the regulations gives any property owner the right to participate by receiving subsidies. (Reply Brief at 5–6.)